JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Janelle Newsome, individually and on behalf of others similarly situated

## DEFENDANTS
City of Philadelphia

**(b)** County of Residence of First Listed Plaintiff   Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Ian M. Bryson, Esq., Derek Smith Law Group, PLLC, 1835 Market St., Ste. 2950, Philadelphia, PA 19103, 215-391-4790

Attorneys *(If Known)*
Office of the City Solicitor

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❒ 1   U.S. Government   Plaintiff

☒ 3   Federal Question
     *(U.S. Government Not a Party)*

❒ 2   U.S. Government   Defendant

❒ 4   Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*     *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❒ 1 | ❒ 1 | Incorporated *or* Principal Place of Business In This State | ❒ 4 | ❒ 4 |
| Citizen of Another State | ❒ 2 | ❒ 2 | Incorporated *and* Principal Place of Business In Another State | ❒ 5 | ❒ 5 |
| Citizen or Subject of a Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❒ 625 Drug Related Seizure of Property 21 USC 881 | ❒ 422 Appeal 28 USC 158 | ❒ 375 False Claims Act |
| ❒ 120 Marine | ❒ 310 Airplane | ❒ 365 Personal Injury - | ❒ 690 Other | ❒ 423 Withdrawal 28 USC 157 | ❒ 376 Qui Tam (31 USC 3729(a)) |
| ❒ 130 Miller Act | ❒ 315 Airplane Product Liability | Product Liability | | | ❒ 400 State Reapportionment |
| ❒ 140 Negotiable Instrument | ❒ 320 Assault, Libel & | ❒ 367 Health Care / Pharmaceutical | | **PROPERTY RIGHTS** | ❒ 410 Antitrust |
| ❒ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ❒ 820 Copyrights | ❒ 430 Banks and Banking |
| ❒ 151 Medicare Act | ❒ 330 Federal Employers' Liability | ❒ 368 Asbestos Personal | | ❒ 830 Patent | ❒ 450 Commerce |
| ❒ 152 Recovery of Defaulted Student Loans | ❒ 340 Marine | Injury Product Liability | | ❒ 835 Patent - Abbreviated New Drug Application | ❒ 460 Deportation |
| (Excludes Veterans) | ❒ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ❒ 840 Trademark | ❒ 470 Racketeer Influenced and Corrupt Organizations |
| ❒ 153 Recovery of Overpayment of Veteran's Benefits | ❒ 350 Motor Vehicle | ❒ 370 Other Fraud | ❒ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❒ 480 Consumer Credit |
| ❒ 160 Stockholders' Suits | ❒ 355 Motor Vehicle Product Liability | ❒ 371 Truth in Lending | ❒ 720 Labor/Management Relations | ❒ 861 HIA (1395ff) | ❒ 485 Telephone Consumer Protection Act |
| ❒ 190 Other Contract | ❒ 360 Other Personal Injury | ❒ 380 Other Personal Property Damage | ❒ 740 Railway Labor Act | ❒ 862 Black Lung (923) | ❒ 490 Cable/Sat TV |
| ❒ 195 Contract Product Liability | ❒ 362 Personal Injury - Medical Malpractice | ❒ 385 Property Damage Product Liability | ❒ 751 Family and Medical Leave Act | ❒ 863 DIWC/DIWW (405(g)) | ❒ 850 Securities/Commodities/ Exchange |
| ❒ 196 Franchise | | | ❒ 790 Other Labor Litigation | ❒ 864 SSID Title XVI | ❒ 890 Other Statutory Actions |
| | | | | ❒ 865 RSI (405(g)) | ❒ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❒ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❒ 893 Environmental Matters |
| ❒ 210 Land Condemnation | ❒ 440 Other Civil Rights | **Habeas Corpus:** | | ❒ 870 Taxes (U.S. Plaintiff or Defendant) | ❒ 895 Freedom of Information Act |
| ❒ 220 Foreclosure | ❒ 441 Voting | ❒ 463 Alien Detainee | | ❒ 871 IRS—Third Party 26 USC 7609 | ❒ 896 Arbitration |
| ❒ 230 Rent Lease & Ejectment | ☒ 442 Employment | ❒ 510 Motions to Vacate Sentence | | | ❒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❒ 240 Torts to Land | ❒ 443 Housing/ Accommodations | ❒ 530 General | | | ❒ 950 Constitutionality of State Statutes |
| ❒ 245 Tort Product Liability | ❒ 445 Amer. w/Disabilities - Employment | ❒ 535 Death Penalty | **IMMIGRATION** | | |
| ❒ 290 All Other Real Property | ❒ 446 Amer. w/Disabilities - Other | **Other:** | ❒ 462 Naturalization Application | | |
| | ❒ 448 Education | ❒ 540 Mandamus & Other | ❒ 465 Other Immigration Actions | | |
| | | ❒ 550 Civil Rights | | | |
| | | ❒ 555 Prison Condition | | | |
| | | ❒ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
❒ 2 Removed from State Court
❒ 3 Remanded from Appellate Court
❒ 4 Reinstated or Reopened
❒ 5 Transferred from Another District *(specify)*
❒ 6 Multidistrict Litigation - Transfer
❒ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 USC Section 201 et seq; 42 USC Section 2000e et seq; 42 USC Section 1983
Brief description of cause:
Violation of FLSA's "Break Time for Nursing Mothers" provisions, sex discrimination, pregnancy discrimination

## VII. REQUESTED IN COMPLAINT:
❒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ❒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE     DOCKET NUMBER

DATE
11/26/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 1442 Elbridge Street, Philadelphia, PA 19149 _____

Address of Defendant: _____ Municipal Services Building, 1401 John F. Kennedy Boulevard, Philadelphia, PA 19102 _____

Place of Accident, Incident or Transaction: _____ Philadelphia _____

---

**RELATED CASE, IF ANY:**

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11/26/2019 _____    _____ *Must sign here* _____    321359 _____
                                    *Attorney-at-Law / Pro Se Plaintiff*           *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.    Federal Question Cases:**

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Patent
☐ 6.  Labor-Management Relations
☑ 7.  Civil Rights
☐ 8.  Habeas Corpus
☐ 9.  Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
       *(Please specify):* _____

**B.    Diversity Jurisdiction Cases:**

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury *(Please specify):* _____
☐ 7.  Products Liability
☐ 8.  Products Liability – Asbestos
☐ 9.  All other Diversity Cases
       *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, **Ian M. Bryson, Esquire** _____ , counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 11/26/2019 _____    _____ *Sign here if applicable* _____    321359 _____
                                    *Attorney-at-Law / Pro Se Plaintiff*           *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

*Janelle Newsone*       :     CIVIL ACTION

v.

*City of Philadelphia*      :     NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    (✗)

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( )

_11/26/19_       _Ian M. Bryson, Esq._      _Plaintiff_
**Date**         **Attorney-at-law**       **Attorney for**

_215-891-4790_      _215-893-5288_      _ian@dereksmithlaw.com_
**Telephone**        **FAX Number**       **E-Mail Address**

(Civ. 660) 10/02

**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiff and the Proposed Class*

### IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

---

|  |  |
|---|---|
| JANELLE NEWSOME, | : Civil Action No. |
| *individually and on behalf of others similarly situated*, | : |
| | : **COLLECTIVE ACTION** |
| Plaintiff, | : **COMPLAINT FOR** |
| | : **DECLARATORY JUDGMENT,** |
| v. | : **INJUNCTIVE RELIEF** *and* |
| | : **DAMAGES** |
| CITY OF PHILADELPHIA, | : |
| | : |
| Defendant. | : |

---

### NATURE OF THE ACTION

1. Plaintiff Janelle Newsome brings this suit individually and on behalf of all others similarly situated as a collective action seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. ("FLSA") contending that the Philadelphia Police Department has systematically and willfully failed to provide nursing female police officers with "reasonable break time to express breast milk for their nursing children for 1 year after the child's birth each time such employee has need to express the milk," and has further failed to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by employees to express breast milk." 29 U.S.C. § 207(r)(1)(A) and (B).

1

2. Plaintiff also brings this action for personal relief from sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983").

3. Plaintiff seeks injunctive and declaratory relief, compensatory damages, punitive damages, liquidated damages, statutory penalties, reasonable attorneys' fees, litigation costs and pre- and post-judgment interest as remedies for Defendant's violations of her rights.

## PARTIES

4. Plaintiff Janelle Newsome ("Ms. Newsome") is an adult individual resident of Philadelphia County and a citizen of the Commonwealth of Pennsylvania. Pursuant to Section 216(b) of the FLSA, Plaintiff has consented in writing to be a party in this action. Her executed Consent to Sue form is attached hereto as Exhibit "A."

5. Defendant City of Philadelphia ("the City") is a municipality of the Commonwealth of Pennsylvania. The City owns, operates, manages, directs and controls the Philadelphia Police Department ("the PPD"), whose agents, servants and employees at all relevant times were acting within the course and scope of their employment under color of state law and operating pursuant to official policies, customs or practices of the City and the PPD.

6. Plaintiff was an "employee" and Defendant was an "employer" covered by the FLSA and Title VII and was required to comply with the mandates therein.

7. Defendant systematically and willfully failed to satisfy the requirements of the FLSA, Title VII and Section 1983.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER TITLE VII**

8. Ms. Newsome timely filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") alleging violations of Title VII the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"), and the Philadelphia Fair Practices Ordinance, Philadelphia Code §§ 9-1101 et seq. ("PFPO").

9. EEOC issued Ms. Newsome a Notice of Right to Sue Within 90 Days. Ms. Newsome has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

10. Ms. Newsome's PHRA and PFPO claims are still pending before PHRC because less than one year has elapsed since PHRC assumed jurisdiction over her charges. After one year, Ms. Newsome will seek leave to amend this complaint to assert her PHRA and PFPO claims.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C § 1331 because it involves questions of federal law under Title VII, Section 1983 and the FLSA.

12. Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendant is subject to personal jurisdiction here.

13. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

14. The PPD employs over 6300 sworn members, approximately 35% of which are women. There are eleven different ranks in the PPD in the following order, beginning at the entry

level position of Police Officer and ending with Police Commissioner: (1) Police Officer;

(2) Detective; (3) Corporal; (4) Sergeant; (5) Lieutenant; (6) Captain; (7) Staff Inspector;

(8) Inspector; (9) Chief Inspector; (10) Deputy Commissioner; and (11) Commissioner.

The City's Office of Human Resources provides the following job class specification for

Police Officer:

GENERAL DEFINITION

This is general duty police work on an assigned shift involving the protection of life and property, enforcement of laws, and investigation of crimes. Work is performed under the supervision of a police officer of higher rank.  The employee has a controlling impact on the prevention of crime within an assigned area.  Work requires regular exposure to uncontrolled and/or unpredictable conditions and the frequent exercise of moderate physical effort. The essential functions and tasks required for the position of police officer, include, but are not limited to, qualification and use of firearms, patrolling and apprehension of suspects. Employees in this class must also comply with Commonwealth municipal police officer certification requirements

ALLOCATING FACTORS

Positions in this class must be able to perform the essential and physical functions of the job.

TYPICAL EXAMPLES OF WORK

Patrols a designated area of the city, on foot, bicycle, segway or horseback, or in a car, motorcycle, or police boat to prevent and discover the commission of crime and to enforce traffic and parking regulations; answers calls and complaints, taking the necessary police action.

Takes proper police action at scene of crime, administers first aid, gathers evidence, locates witnesses and makes arrest; appears in court to present evidence and testify against persons accused of crimes.

Investigates persons suspected of being engaged in gambling, illegal sale of liquors, or other vice activities; checks the operation of taverns, poolrooms, dance halls, clubs, and similar establishments for compliance with laws and ordinances.

Ascertains validity of information or secures evidence for the arrest of persons alleged to have committed a crime; searches for and preserves evidence; interviews suspects, prisoners, complainants, and witnesses, takes information or secures

evidence for the arrest of persons alleged to have committed a crime; searches for and preserves evidence; interviews suspects, prisoners, complainants and witnesses to obtain information about crimes; reports automobile accidents, interviews witnesses, takes information, and makes detailed reports.

Investigates complaints concerning juveniles; discusses the case with complainant, juvenile, parents and others who may be able to aid in the case; investigates crimes by and against juveniles; testifies in court concerning case, visits neighborhood boys' clubs and recreation centers, counseling leaders on juvenile problems.

Writes detailed reports of automobile accidents in cases where personal injuries or property damage is apparent.

Works with community residents, business owners and other City employees to solve problems of crime and disorder.

Performs all duties and responsibilities at the highest level of personal and professional ethics.

Uses computer systems to identify crime patterns, analyzes the nature of crime and disorders, problems and obtains information relevant to crime control and prevention.

May serve in the district operations office to perform necessary clerical procedures connected with police work.

Performs related work as required.

<u>REQUIRED KNOWLEDGE, SKILLS AND ABILITIES</u>

<u>KNOWLEDGE OF</u>:

- the use, care and safe handling of firearms and other equipment used in the performance of essential tasks;
- the laws controlling, and the procedures, practices and techniques necessary to police patrol operations;
- the laws, codes, statutes and regulations concerning criminal activity, especially when they apply to law enforcement operations;
- the criminal justice system as it applies to law enforcement operations;
- the techniques, practice and procedures necessary to the effective interaction with the general public, victims, suspects, and officers of other agencies and municipalities; and
- duty manuals, departmental organizations, administrative direction and applicable City ordinances.

<u>SKILL IN</u>:

- the use and care of firearms and other equipment used in the performance of essential tasks

ABILITY TO:

- cope with situations firmly, courteously, tactfully and with respect for the rights of others;
- analyze situations quickly and objectively, and to determine a proper course of action to be taken;
- understand and carry out oral and written instructions;
- write and speak effectively;
- learn clerical procedures connected with police work;
- make arrests;
- take necessary police action to prevent the commission of a crime, including use of a firearm where needed;
- patrol streets on foot;
- respond to emergency situations;
- use firearms and other weapons as needed;
- operate equipment in the performance of essential tasks;
- perform the essential and physical functions of the job;
- identify, analyze and respond to crime and disorder problems; and
- use computer systems to obtain necessary information in the performance of the position.

MINIMUM ACCEPTABLE TRAINING AND EXPERIENCE

**For employees hired from eligible lists for Police Officer Recruit initially established before 2012:**

EDUCATION: Education equivalent to standard high school.

AND

TRAINING: Recent successful completion of training as a Police Officer Recruit at the City of Philadelphia Police Academy.

OR

CERTIFICATION: Possession of Pennsylvania Municipal Police Officers' Certification from the Pennsylvania Municipal Police Officers Education and Training Commission prior to appointment and during tenure of employment as a Police Officer 1.

**For employees hired from eligible lists for Police Officer Recruit initially established during or after 2012 or from Police Officer 1 eligible lists initially established during or after 2011:**

6

Option 1

TRAINING: Recent successful completion of training as a Police Officer Recruit at the City of Philadelphia Police Academy.

OR

Option 2

EDUCATION:  Education equivalent to completion of a standard high school.

AND

EXPERIENCE: One year of full time employment as a commonwealth or state certified Law Enforcement Officer which has been within the three year period immediately prior to the thirtieth (30) day after the last date for filing applications for the examination for this class.

AND

CERTIFICATION: Possession of a commonwealth or state Law Enforcement Officers' Certification.

PHYSICAL AND MEDICAL REQUIREMENTS

Ability to meet the physical and medical standards approved for this class.

Age—Must have reached Nineteenth (19th) Birthday as of the date of appointment.

LICENSES, REGISTRATIONS AND/OR CERTIFICATES

Possession of Pennsylvania Municipal Police Officers' Certification from the Pennsylvania Municipal Police Officers Education and Training Commission prior to appointment and during tenure of employment as a Police Officer 1.

Initial and annual qualification on a police firearms course, by a certified police firearms instructor, with any firearms, shotguns, rifles authorized for use including personal weapons carried in lieu of issued weapons or as a second weapon.

Possession of a valid proper class motor vehicle operator's license as issued by the Commonwealth of Pennsylvania within 60 days of establishing Pennsylvania residency and during tenure of employment as a Police Officer 1.
Preferred License

Possession of a valid proper class motor vehicle operator's license from any state at least three years prior to appointment as a Police Officer 1.

See City of Philadelphia Office of Human Resources Personnel Job Class Specifications,
*Police Officer 1*, https://www.phila.gov/personnel/specs/6A02.htm

15. Pursuant to 29 U.S.C. §§ 216(b) and 207(r) of the FLSA, Ms. Newsome brings this action
individually and on behalf of all other similarly situated female Police Officers employed
by the PPD during the past three years who were denied their rights under the FLSA's
"Break Time for Nursing Mothers" provision, which requires employers to provide (1)
"reasonable break time for an employee to express breast milk for her nursing child for 1
year after the child's birth each time such employee has need to express the milk"; and
(2) "a place, other than a bathroom, that is shielded from view and free from intrusion
from coworkers and the public, which may be used by an employee to express breast
milk." 29 U.S.C. § 207(r)(1)(A) and (B).

16. The members of the putative class are hereinafter referred to as "Collective Class
Plaintiffs."

17. Plaintiff estimates that there are in excess of 500 other similarly situated Collective Class
Plaintiffs who are working or worked for the PPD and are or were unlawfully denied
their rights under the FLSA's Break Time for Nursing Mothers provision, 29 U.S.C. §
207(r). The precise number of employees can be easily ascertained by Defendant. These
employees can be identified and located using Defendant's payroll and personnel records.
Potential Collective Class Plaintiffs may be informed of the pendency of this Collective
Action by direct mail and/or publication.

18. Pursuant to 29 U.S.C. § 216(b), this action is properly maintained as a collective action
because all class members are similarly situated. Plaintiff and other similarly situated
female Police Officers (1) were similarly denied reasonable break time to express breast
milk for their nursing children for 1 year after birth each time they needed to, and also

denied a private place, other than a bathroom, to do so; (2) had the same or substantially similar job classifications and duties; and (3) were subject to the same uniform policies, business practices, payroll practices, and operating procedures.

19. Further, Defendant's willful policies and practices, which are discussed more fully below, whereby Defendant denied Plaintiff and Collective Class Plaintiffs their rights under the FLSA's Break Time for Nursing Mothers provision, have affected Plaintiff and Collective Class Plaintiffs in the same fashion.

20. In violation of the FLSA, Defendant failed to provide Plaintiff and Collective Class Plaintiffs "reasonable break time to express breast milk for [their] nursing child[ren] for 1 year after the child's birth each time such employee has need to express the milk." 29 U.S.C. § 207(r)(1)(A) and (B).

21. In violation of the FLSA, Defendant also failed to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by [Plaintiff and Collective Class Plaintiffs] to express breast milk." 29 U.S.C. § 207(r)(1)(B).

22. This policy and practice is unequivocal evidence of Defendant's systematic, willful and improper failure to follow the provisions of the FLSA.

23. Plaintiff will request the Court to authorize notice to all current and former similarly situated female Police Officers employed by the PPD in the last three years to inform them of the pendency of this action and their right to "opt in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking actual damages, liquidated damages, attorneys' fees, litigation costs, declaratory relief, employment consistent with the FLSA, and all other relief available.

## FACTUAL BACKGROUND

24. Plaintiff repeats every allegation made in the above paragraphs of this complaint.

25.  On December 22, 2014, Ms. Newsome started working for the PPD as a Police Officer assigned to the 18th District.

26. In July 2018, Ms. Newsome gave birth to her child.

27. In January 2019, Ms. Newsome returned to work from leave and was detailed to the PPD's Neighborhood Services Unit ("NSU") on restricted duty. She was still nursing her infant child and expected to do so until her child reached age 1 in July 2019.

28. Upon returning to work, Ms. Newsome experienced ongoing pregnancy discrimination regarding her need to express milk at work.

29. Defendant denied Ms. Newsome reasonable break time to express breast milk for her nursing child for 1 year after the child's birth each time she had the need to express the milk.

30. Defendant also denied Ms. Newsome a private place, other than a bathroom, that was shielded from view and free from intrusion from coworkers and the public that she could use to express breast milk.

31. The PPD has no policy or directive in place to provide basic accommodations for breastfeeding mothers like Ms. Newsome.

32. The PPD does not provide accommodations for nursing mothers like Ms. Newsome—it does not provide time for women to express milk, nor does it provide private space that is not a bathroom each time women need to pump.

33. As a result, women employed by the PPD are kept unaware and deprived of their statutory civil rights.

34. When Ms. Newsome arrived to NSU, she informed her supervisor, Sergeant Herbert Gibbons, that she would need to pump at work and that she would "try to only do it once per day." Because the PPD does not provide accommodations for nursing mothers, Sergeant Gibbons failed to apprise Ms. Newsome of her right to take time to express milk, nor did he apprise her of her right to a private space (that is not a bathroom) each time she needed to pump. Rather, Sergeant Gibbons stated, "We'll figure something out," and at no time thereafter did Sergeant Gibbons provide accommodations for Ms. Newsome.

35. As a result, Ms. Newsome did not have a private, sanitary space that was regularly available and free from interruptions from coworkers; and she was forced to pump at irregular times or not at all.

36. For example, Ms. Newsome attempted to pump in an office that was frequently used by the building's all-male tech crew, who often told her "we're going to be in here for a while," forcing her to pump in the restroom or not pump at all. Occasionally, when the room was vacant, Ms. Newsome was often interrupted by the all-male tech crew who would knock on the door and ask, "When are you going to be done" and wait outside until she came out.

37. On another occasion Sergeant Gibbons instructed Ms. Newsome and another nursing mother—Officer Jennifer Allen—to "pump in Officer John Whipple's office." The same day, or shortly thereafter, Ms. Newsome and Officer Allen were asked by another police officer, Officer Darden, "Were you notified that you had to start pumping in Mary's (a civilian coworker) office?" Ms. Newsome and Officer Allen had not been notified of this

change. Officer Darden further stated, "You should pump at the same time in the same room."

38. Upon hearing this, Ms. Newsome became concerned that her supervisors and coworkers did not support her need to pump at work and that her ability to do so was in jeopardy. Ms. Newsome and other nursing mothers rely on a positive, accepting attitude from supervisors and coworkers to feel confident in the ability to continue working while breastfeeding. Ms. Newsome and other nursing mothers also rely on consistent availability of a private space to pump. These accommodations are not provided by the PPD.

39. On another occasion, another police officer, Officer Martin, told Ms. Newsome and Officer Allen that "people need to get into the office you're pumping in during the time that you pump," and directed them to "pump in Mary's office from now on."

40. On another occasion, Sergeant Gibbons called Ms. Newsome and Officer Allen into his office and stated, "You are to put the sign (a sign they hung on the door while they were pumping to notify others the room was in use) back in my office after each use." Sergeant Gibbons further stated that he "doesn't want to hear Mary making a big fuss about the sign," and that he "wants to avoid hearing her mouth." This arrangement required Ms. Newsome and Officer Allen to retrieve the privacy sign from an office occupied by three male officers each and every time they needed to pump and return the sign to the three male officers each and every time they were finished. Ms. Newsome and Officer Allen found this arrangement to be extremely demeaning.

41. On another occasion, Ms. Newsome, Officer Allen and Officer Tanya Richardson approached Sergeant Gibbons about their coworkers' frequent interruptions and negative

12

comments regarding their need to express milk at work. They requested that Sergeant Gibbons address the issue with their coworkers. In response, Sergeant Gibbons stated, "I won't address it with anyone because I would be kicked out of the unit." He further stated, "Anytime I have spoken up before I was backstabbed and given 18's (disciplined)." These frequent negative interactions regarding Ms. Newsome's and Officer Allen's rights caused both women to cry at work on several occasions.

42. On another occasion, Ms. Newsome told Sergeant Gibbons, "I do not feel comfortable with the procedure of getting the privacy sign from you because I have to walk into an office with three male officers, ask them for the sign, and then walk back into the same office to return it to them. It makes me feel uncomfortable." Officer Allen agreed.

43. Later that day, Sergeant Gibbons called Ms. Newsome and Officer Allen into the break room and stated, "Effective immediately you will pump in Mary's office, a permanent sign will be made that will hang on the door, and you will each have keys to the office. You can pump whenever you want to." This conversation occurred in late-April 2019, approximately 4 months after Ms. Newsome had returned to work from leave.

44. Ms. Newsome and Officer Allen asked Sergeant Gibbons "if Mary had been notified that we were to pump in her office," and Sergeant Gibbons said "yes."

45. However, when Ms. Newsome and Officer Allen attempted to use Mary's office, Mary stated, "I have work to do, you have to use another office."

46. Officer Allen informed Sergeant Gibbons that "Mary said we can't use her office," and Sergeant Gibbons responded, "she has to," but took no further action to remedy the situation. He did not provide Ms. Newsome and Officer Allen with keys or a permanent

sign as he had promised. He did not instruct Mary to allow the women to pump in her office.

47. Later, Ms. Newsome and Officer Allen again complained to Sergeant Gibbons that they had not been given the basic accommodations that he had promised  . Ms. Newsome stated, "You said provisions would be made for us." In response, Sergeant Gibbons said, "By law, I only have to give you 10 minutes." Ms. Newsome responded, "10 minutes is not long enough to begin the flow of milk—it could take me up to 30 minutes." Sergeant Gibbons changed the subject and took no further action to accommodate her needs.

48. Around April 29, 2019, Ms. Newsome and Officer Allen were instructed to pump in the building's lunch room during lunch hour. That day, while Ms. Newsome was attempting to use the lunch room to pump, coworkers started gathering outside, knocking on the door and asking, "What's going on in there?"

49. When Ms. Newsome opened the door to the lunch room, one employee who had been waiting outside said "FINALLY" and groaned before entering the room. The employee then asked Ms. Newsome, "Can I come in when you're pumping because I'm a woman?"

50. The PPD is responsible for alerting employees about the employer's worksite lactation program (which the PPD does not have) and for negotiating policies and practices to help facilitate each employee's infant feeding goals. Defendant failed to meet these requirements.

51. The PPD is responsible for knowing exactly how to support employees like Ms. Newsome, including educating all staff about the importance of respecting a coworker's privacy while pumping and providing coverage during lactation breaks. Defendant failed to meet these requirements.

14

52. The PPD is responsible for ensuring that all employees will assist in providing a positive atmosphere of support for breastfeeding employees like Ms. Newsome. Defendant failed to meet these requirements.

53. The PPD's ongoing failure to provide Ms. Newsome with consistent, private and sanitary lactation space caused her extreme anxiety and uncertainty about her ability to continue breastfeeding her child. Breastfeeding and working takes a lot of time, coordination and dedication from a mother. A lactation space is necessary because in order to begin the flow of milk, mothers must be able to sit down and relax, and not be stressed. Mothers such as Ms. Newsome who are placed in an open or uncomfortable space, or who are worried about hostility from coworkers, may not be able to pump milk or may not be able to pump milk as quickly.

54. As a result of the PPD's failure to designate private, sanitary rooms for nursing employees like Ms. Newsome to express breast milk at work, Ms. Newsome was forced to stop pumping at work altogether. For the next several months she could only pump at nighttime when she arrived home from work.

55. On several occasions, Ms. Newsome was forced to take sick leave to pump at home.

56. Officer Allen also was forced to stop pumping at work and took leave to pump at home.

57. Section 4207 of the Patient Protection and Affordable Care Act, which amended Section 7 of the FLSA, 29 U.S.C. § 207, requires employers to provide "reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk." 29 U.S.C. § 207(r)(1)(A). The law further requires employers to provide "a place, other than a bathroom, that is

15

shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 207(r)(1)(B).

58. The FLSA and the "Break Time for Nursing Mothers" provision cover all public agency employees of a State, a political subdivision of a State, or an interstate government agency. 29 U.S.C. § 203(s)(1)(C). Federal law does not preempt "a State law that provides greater protections to employees than the protections provided for under [the federal law]." 29 U.S.C. 207(r)(4).

59. The Philadelphia Fair Practices Ordinance (the "PFPO") expands on the federal protections under the FLSA. Under the PFPO, "it shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon . . . her . . . sex (including pregnancy, childbirth, or a related medical condition), . . . including, but not limited to . . . fail[ing] to reasonably accommodate an individual's need to express breast milk. Reasonable accommodations include providing unpaid break time or allowing an employee to use paid break, mealtime, or both, to express milk and providing a private, sanitary space that is not a bathroom where an employee can express breast milk . . ." Phila. Code § 9-1103(1)(m)(i).

60. The PPD failed to provide these basic accommodations to Plaintiff and Collective Class Plaintiffs. None of the PPD's 21 police districts provide accommodations for nursing mothers: women are forced to express milk in unsanitary bathrooms that are often extremely hot or extremely cold and infested with roaches and mice.

61. Plaintiff's and Collective Class Plaintiffs' job duties are the same and generally include: patrolling designated areas of the city on foot, bicycle, segway, horseback, car, motorcycle, or police boat to prevent and discover the commission of crimes and traffic

and parking violations; answering calls and complaints; and taking the necessary police action (in addition to other duties specified in paragraph 14 above).

62. Throughout Plaintiff's and Collective Class Plaintiffs' employment with Defendant, Defendant failed to provide Plaintiff and Collective Class Plaintiffs "reasonable break time to express breast milk for [their] nursing child[ren] for 1 year after the child's birth each time such employee has need to express the milk." 29 U.S.C. § 207(r)(1)(A) and (B).

63. Moreover, throughout Plaintiff's and Collective Class Plaintiffs' employment with Defendant, Defendant failed to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by [Plaintiff and Collective Class Plaintiffs] to express breast milk." 29 U.S.C. § 207(r)(1)(B).

64. Violations of Plaintiff's and Collective Class Plaintiffs' federally protected rights were the result of official policy: the City, the PPD, and their policymaking officials (1) directed that the violations of occur; (2) authorized the violations; (3) agreed to subordinates' decisions to engage in the violations; (4) provided inadequate training; (5) provided inadequate supervision; and (6) failed to adopt needed policies to prevent the violations.

65. Plaintiff and Collective Class Plaintiffs were and are, within the meaning of the FLSA, non-exempt employees of Defendant and therefore entitled to the statutorily mandated protections of the FLSA's Break Time for Nursing Mothers provision.

66. Plaintiff and Collective Class Plaintiffs were "employees" of Defendant as defined by the FLSA.

67. As a result of Defendant's violations of the law, Plaintiff and Collective Class Plaintiffs were subjected to employment inconsistent with the FLSA.

68. Defendant threatened to discipline any employee who questioned its unlawful practices.

69. As a result, Plaintiff and Collective Class Plaintiffs have suffered damages.

<u>**COUNT I**</u>
**VIOLATIONS OF FLSA PROTECTIONS FOR NURSING MOTHERS**
**29 U.S.C. § 207(r)**
<u>**Plaintiff and Collective Class Plaintiffs v. Defendant City of Philadelphia**</u>

70. Plaintiff repeats every allegation made in the above paragraphs of this complaint.

71. Section 4207 of the Patient Protection and Affordable Care Act ("ACA"), which amended Section 7 of the FLSA, 29 U.S.C. § 207, requires employers to provide "reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk." 29 U.S.C. § 207(r)(1)(A).

72. The law further requires employers to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 207(r)(1)(B).

73. The FLSA and the "Break Time for Nursing Mothers" provision cover all public agency employees of a State, a political subdivision of a State, or an interstate government agency. 29 U.S.C. § 203(s)(1)(C).

74. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee, including individual supervisors and management officials. 29 U.S.C. § 203(d).

75. Defendant violated Plaintiff and Collective Class Plaintiffs' rights under the FLSA by (1) failing to provide reasonable break time for Plaintiff and Collective Class Plaintiffs to

"express breast milk for her nursing child for 1 year after the child's birth each time she had a need to express the milk"; and (2) failing to provide Plaintiff and Collective Class Plaintiffs "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used to express breast milk."

76. The foregoing actions, policies and practices of Defendant violate the FLSA.

77. Defendant's actions were willful, in bad faith and in reckless disregard of clearly applicable FLSA provisions.

78. Defendant is liable to Plaintiff and Collective Class Plaintiffs for actual damages, liquidated damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs and expenses.

**WHEREFORE**, Plaintiff prays for the following relief on behalf of herself and Collective Class Plaintiffs:

a.  An Order from this Court permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

b.  An Order from this Court ordering Defendant to file with this Court and furnish to the undersigned counsel a list of all names and addresses of all female Police Officers who have worked for Defendant during the preceding three years, and authorizing Plaintiff's counsel to issue a notice at the earliest possible time to these individuals, informing them that this action has been filed, of the nature of the action, and of their right to opt in to this lawsuit if they worked for Defendant during the liability period, but were denied their rights under the Break Time for Nursing Mothers provision of the FLSA;

c.  Adjudicating and declaring that Defendant's conduct as set forth herein and above is in violation of the FLSA;

d.  Adjudicating and declaring that Defendant violated the FLSA by failing to provide reasonable break time and private, sanitary lactation space for nursing mothers;

e.  Awarding Plaintiff and Collective Class Plaintiffs damages in an amount consistent with the FLSA;

f.  Awarding Plaintiff and Collective Class Plaintiffs liquidated damages in accordance with the FLSA;

g.  Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Defendant, in accordance with the FLSA;

h.  Awarding pre- and post-judgment interest and court costs as further allowed by law;

i.  Granting Plaintiff and Collective Class Plaintiffs leave to add additional plaintiffs by motion, the filing of written opt in consent forms, or any other method approved by the Court; and

j.  For all additional general and equitable relief to which Plaintiff and Collective Class Plaintiffs are entitled.

**COUNT II**
**FLSA RETALIATION**
**29 U.S.C. § 215**
**Plaintiff and Collective Class Plaintiffs v. Defendant City of Philadelphia**

79. Plaintiff repeats every allegation made in the above paragraphs of this complaint.

80. The FLSA prohibits retaliation by employers against employees for asserting their rights under the Act. 29 U.S.C. § 215(a)(3).

81. Defendant violated the FLSA's anti-relation provision when it took materially adverse employment actions against Plaintiff and Collective Class Plaintiffs for asserting their rights under the Break Time for Nursing Mothers law.

82. As a result of Defendant's violations of the FLSA, Plaintiff and Collective Class Plaintiffs have suffered damages, including, but not limited to: loss of employment, diminishment of career opportunities, past and future lost wages, reputational harm, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, and other harm, both tangible and intangible.

83. The foregoing actions, policies and practices of Defendant violate the FLSA.

84. Defendant's actions were willful, in bad faith and in reckless disregard of clearly applicable FLSA provisions.

85. Defendant is liable to Plaintiff and Collective Class Plaintiffs for actual damages, liquidated damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs and expenses.

**WHEREFORE**, Plaintiff prays for the following relief on behalf of herself and Collective Class Plaintiffs:

a. An Order from this Court permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

b. An Order from this Court ordering Defendant to file with this Court and furnish to the undersigned counsel a list of all names and addresses of all female Police Officers who have worked for Defendant during the preceding three years, and authorizing Plaintiff's counsel to issue a notice at the earliest possible time to these individuals, informing them that this action has been filed, of the nature of the action, and of their right to opt in to this lawsuit if they worked for Defendant during the liability period, but were denied their rights under the Break Time for Nursing Mothers provision of the FLSA;

c. Adjudicating and declaring that Defendant's conduct as set forth herein and above is in violation of the FLSA;

d. Adjudicating and declaring that Defendant violated the FLSA by retaliating against employees who asserted their rights to reasonable break time and private, sanitary lactation space;

e. Awarding Plaintiff and Collective Class Plaintiffs damages in an amount consistent with the FLSA;

f. Awarding Plaintiff and Collective Class Plaintiffs liquidated damages in accordance with the FLSA;

g. Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Defendant, in accordance with the FLSA;

h. Awarding pre- and post-judgment interest and court costs as further allowed by law;

i. Granting Plaintiff and Collective Class Plaintiffs leave to add additional plaintiffs by motion, the filing of written opt in consent forms, or any other method approved by the Court; and

j. For all additional general and equitable relief to which Plaintiff and Collective Class Plaintiffs are entitled.

## COUNT III
### TITLE VII DISPARATE TREATMENT
### 42 U.S.C. § 2000e-2
### Plaintiff Janelle Newsome v. Defendant City of Philadelphia

86. Plaintiff repeats every allegation made in the above paragraphs of this complaint.

87. Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

88. Title VII further provides that "it shall be an unlawful employment practice for any employer . . . controlling . . . training or retraining, including on-the-job training programs to discriminate against any individual because of [her] race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide . . . training." 42 U.S.C. § 2000e-2(d).

89. In 1978, Congress enacted the Pregnancy Discrimination Act, 92 Stat. 2076, which added new language to Title VII's definitions subsection to specify that Title VII's "ter[m] 'because of sex' . . . include[s] . . . because of or on the basis of pregnancy, childbirth, or related medical conditions.; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k); Young v. United Parcel Serv., Inc., 135 S. Ct. 1344-45 (2015) (explaining "that the denial of an accommodation constituted disparate treatment under the Pregnancy Discrimination Act.").

90. Title VII further provides that "un unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a

motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

91. The City engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to her compensation, terms, conditions, training and privileges of employment because of her sex and pregnancy.

92. The City subjected Plaintiff to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing changes in significant changes in her employment benefits.

93. Plaintiff's protected characteristics (sex and pregnancy) played a determinative factor in the City's decisions.

94. The City cannot show any legitimate nondiscriminatory reasons for its employment practices and any reasons proffered by the City for its actions against Plaintiff are pretextual and can readily be disbelieved.

95. Alternatively, Plaintiff's protected status played a motivating part in the City's decisions even if other factors may also have motivated its actions against Plaintiff.

96. The City acted with the intent to discriminate.

97. The City acted upon a continuing course of conduct.

98. As a result of the City's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

23

**WHEREFORE**, Plaintiff Janelle Newsome demands judgment against Defendant City of Philadelphia and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that the City's conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT IV
### TITLE VII HOSTILE WORK ENVIRONMENT
### 42 U.S.C. § 2000e-2
### Plaintiff Janelle Newsome v. Defendant City of Philadelphia

99. Plaintiff repeats every allegation made in the above paragraphs of this complaint.

100.    Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

101.    An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

102.    Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

24

103.     Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

104.     Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristics and was severe or pervasive enough to make a reasonable nursing mother believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

105.     The harassing conduct directly refers to Plaintiff's sex traits and pregnancy.

106.     The City delegated to Plaintiff's supervisors the authority to control the work environment and they abused that authority to create a hostile work environment.

107.     Harassing conduct based on Plaintiff's sex and pregnancy filled the environment of Plaintiff's work area.

108.     The City knew that the harassing conduct filled Plaintiff's work environment.

109.     Harassing conduct occurred daily.

110.     Harassing conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness and serious psychological sequelae.

111.     Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

112.     The conduct was both severe and pervasive.

113.     The conduct was humiliating.

114.     The conduct unreasonably interfered with Plaintiff's work performance.

115.     The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

25

116.    The City provided a futile avenue for complaint.

117.    The City retaliated against Plaintiff for her complaints.

118.    The City acted upon a continuing course of conduct.

119.    As a result of the City's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff Janelle Newsome demands judgment against Defendant City of Philadelphia and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

**COUNT V**
**TITLE VII RETALIATION**
**42 U.S.C. § 2000e-3**
**Plaintiff Janelle Newsome v. Defendant City of Philadelphia**

120.    Plaintiff repeats every allegation made in the above paragraphs of this complaint.

121.    Title VII protects employees from retaliation for attempting to exercise their rights under the Act:

42 U.S.C. § 2000e-3. Other unlawful employment practices

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of

26

his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

122.    The Supreme Court in Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

123.    Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

124.    Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62 (rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

125.    "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[she] was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995); see also Moore, 461 F.3d at 341 (finding that a transfer of a police officer from a district could constitute actionable

retaliation because it "is the kind of action that might dissuade a police officer from making or supporting a charge of unlawful discrimination within his squad.").

126.      Here, the City discriminated against Plaintiff because of her protected activity under Title VII.

127.      Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination on the basis of sex was violated.

128.      Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

129.      The City also discriminated against Plaintiff by taking materially adverse actions against third parties who engaged in protected activity on Plaintiff's behalf.

130.      There was a causal connection between the City's materially adverse actions and Plaintiff's protected activity.

131.      The City's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

132.      The City acted upon a continuing course of conduct.

133.      Plaintiff will rely on a broad array of evidence to demonstrate a causal link between their protected activity and the City's actions taken against her, such as the unusually-suggestive proximity in time between events, as well as Defendant's antagonism and change in demeanor toward Plaintiff after Defendant became aware of Plaintiff's protected activity.

134.      As a result of the City's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff Janelle Newsome demands judgment against Defendant City of Philadelphia and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT VI
### DISPARATE TREATMENT IN VIOLATION OF EQUAL PROTECTION CLAUSE
### 42 U.S.C. § 1983
### Plaintiff Janelle Newsome v. Defendant City of Philadelphia

135.      Plaintiff repeats every allegation made in the above paragraphs of this complaint.

136.      The Fourteenth Amendment to the United States Constitution protects persons from being subjected to discrimination, by persons acting under color of state law, on the basis of a protected class (e.g., sex). U.S. Const. amend. XIV.

137.      Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of

Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

138.     Section 1983 provides a cause of action for unconstitutional employment discrimination by both employers and individuals, so long as the plaintiff shows that the defendant acted under color of state law. See Fitzgerald v. Barnstable School Committee, 129 S. Ct. 788, 796 (2009) ("The Equal Protection Clause reaches only state actors, but § 1983 equal protection claims may be brought against individuals as well as municipalities and certain other state entities."); see also Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990) ("Liciardello and Doyle objectively should have known the applicable legal standard, and thus are not protected by qualified immunity in treating, or allowing their subordinates to treat, female employees differently on the basis of gender in their work environment.").

139.     "[M]unicipalities and other local government units [are] included among those persons to whom § 1983 applies." Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690 (1978). However, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694.

140.     Defendant violated Section 1983 by intentionally discriminating against Plaintiff in a serious tangible way with respect to her compensation, terms, conditions or privileges of employment.

141.     Plaintiff's protected characteristics (sex) was a determinative or motivating factor in Defendant's employment actions.

142.     Defendant cannot show any legitimate nondiscriminatory reason for its employment practices and any reasons proffered by the Defendant for its actions against Plaintiff are pretextual and can readily be disbelieved.

143.     Plaintiff's protected status played a motivating part in the Defendant's decisions even if other factors may also have motivated Defendant's actions against Plaintiff.

144.     Defendant acted under color of state law.

145.     Defendant acted with the intent to discriminate.

146.     Defendant acted upon a continuing course of conduct.

147.     Moreover, this case unquestionably involves official policy: the City, the PPD, and their policymaking officials (1) directed that the violations occur; (2) authorized the violations; (3) agreed to subordinates' decisions to engage in the violations; (4) provided inadequate training; (5) provided inadequate supervision; and (6) failed to adopt needed policies to prevent the violations.

148.     Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendant.

149.     As a result of Defendant's violations of Plaintiff's Equal Protection rights, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

31

**WHEREFORE**, Plaintiff Janelle Newsome demands judgment against Defendant City of Philadelphia and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with Section 1983; (3) reasonable attorneys' fees in accordance with Section 1983; (4) litigation costs in accordance with Section 1983; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of Section 1983; (7) punitive damages in accordance with Section 1983; (8) front pay in accordance with Section 1983; and (9) all additional general and equitable relief to which Plaintiff is entitled.

**COUNT VII**
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF EQUAL PROTECTION CLAUSE**
**42 U.S.C. § 1983**
**Plaintiff Janelle Newsome v. Defendant City of Philadelphia**

150.  Plaintiff repeats every allegation made in the above paragraphs of this complaint.

151.  The Third Circuit has made it clear that harassment can give rise to an equal protection claim. See, e.g., Andrews v. City of Philadelphia, 895 F.2d 1469, 1478-79 (3d Cir. 1990) (upholding verdict for plaintiff on harassment claims against city employees, based on conclusion that evidence supported finding of purposeful discrimination); see also Bohen v. City of East Chicago, Ind., 799 F.2d 1180, 1185 (7th Cir. 1986) ("harassment of female employees by a state employer constitutes sex discrimination for purposes of the equal protection clause of the fourteenth amendment."); Cheryl L. Anderson, "Nothing Personal:" Individual Liability under 42 U.S.C. § 1983 for Sexual Harassment as an Equal Protection Claim, 19 BERKELEY J. EMP. & LAB. L. 60, 80 (1998) (citing Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986) as support for argument that harassment can satisfy the intentional discrimination requirement for equal protection claims).

152.     The Third Circuit has also made clear that a harassment equal protection claim can be made even if the defendant is not the plaintiff's supervisor. See Bonenberger v. Plymouth Twp., 132 F.3d 20, 24 (3d Cir. 1997).

153.     Additionally, a plaintiff can show an equal protection violation by a supervisor who fails properly to address harassment by the plaintiff's co-workers. Andrews, 895 F.2d at 1479.

154.     A municipal employer can be liable on the theory that it directly encouraged harassment of the plaintiff, or on the theory that it did not do enough to prevent the harassment. See Bohen, 799 F.2d at 1187 ("[A] plaintiff can make an ultimate showing of sex discrimination either by showing that harassment that is attributable to the employer under § 1983 amounted to intentional sex discrimination or by showing that the conscious failure of the employer to protect the plaintiff from the abusive conditions created by fellow employees amounted to intentional discrimination."); cf. Reynolds v. Borough of Avalon, 799 F. Supp. 442, 447 (D.N.J. 1992) (holding that "a reasonable jury might find that the risk of harassment in the workplace is so obvious that an employer's failure to take action to prevent or stop it from occurring--even in the absence of actual knowledge of its occurrence--constitutes deliberate indifference, where the employer has also failed to take any steps to encourage the reporting of such incidents").

155.     Defendant violated Section 1983 by subjecting Plaintiff to harassment based on sex and pregnancy.

156.     Defendant's conduct was not welcomed by Plaintiff.

157.     Defendant's conduct was so severe or pervasive that a reasonable nursing mother would find the work environment to be hostile or abusive.

33

158.     Plaintiff believed her work environment was hostile or abusive as a result of Defendant's conduct.

159.     As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits.

160.     Defendant failed to exercise reasonable care to prevent harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of sex and pregnancy, failing to fully communicate the policy to their employees, failing to provide a reasonable way for Plaintiff to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

161.     Defendant acted under color of state law.

162.     Defendant acted with the intent to discriminate.

163.     Defendant acted upon a continuing course of conduct.

164.     Moreover, this case unquestionably involves official policy: the City, the PPD, and their policymaking officials (1) directed that the violations occur; (2) authorized the violations; (3) agreed to subordinates' decisions to engage in the violations; (4) provided inadequate training; (5) provided inadequate supervision; and (6) failed to adopt needed policies to prevent the violations.

165.     Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendant.

166.     As a result of Defendant's violations of Plaintiff's Equal Protection rights,

Plaintiff has suffered damages, including, but not limited to: past and future lost wages,

pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation,

emotional distress, reputational harm, diminishment of career opportunities, and other

harm, both tangible and intangible.

**WHEREFORE**, Plaintiff Janelle Newsome demands judgment against Defendant City of

Philadelphia and prays for the following relief: (1) actual damages; (2) compensatory damages in

an amount consistent with Section 1983; (3) reasonable attorneys' fees in accordance with

Section 1983; (4) litigation costs in accordance with Section 1983; (5) pre- and post-judgment

interest as further allowed by law; (6) an adjudication and declaration that Defendant's conduct

as set forth herein is in violation of Section 1983; (7) punitive damages in accordance with

Section 1983; (8) front pay in accordance with Section 1983; and (9) all additional general and

equitable relief to which Plaintiff is entitled.

## COUNT VIII
### RETALIATION IN VIOLATION OF PETITION CLAUSE
### 42 U.S.C. § 1983
### Plaintiff Janelle Newsome v. Defendant City of Philadelphia

167.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

168.     The First Amendment gives persons the right to petition the Government for a

redress of grievances. U.S. Const. amend. I.

169.     "[R]etaliation by a government employer for a public employee's exercise of the

right of access to the courts may implicate the protections of the Petition Clause."

Borough of Duryea v. Guarnieri, 131 S. Ct. 2488, 2494 (2011); see also Mack v. Warden

Loretto FCI, 839 F.3d 286 (3d Cir. 2016) (holding that an inmate's oral grievance is protected under the Petition Clause).

170.     To be protected under the First Amendment, speech by a government employee "must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Waters v. Churchill, 511 U.S. 661, 668 (1994).

171.     A report of sex-based discrimination or harassment by a government official can constitute speech on a matter of public concern. See Azzaro v. County of Allegheny, 110 F.3d 968, 975 (3d Cir. 1997) (reasoning that the plaintiff's reports "brought to light actual wrongdoing on the part of one exercising public authority.").

172.     The plaintiff must show a "causal link" between the protected speech and the adverse employment action. See Azzaro, 110 F.3d at 981 (reversing summary judgment dismissing First Amendment retaliation claim because there existed "a material dispute of fact as to whether [plaintiff's] reports were a motivating factor in the discharge decision").

173.     If the plaintiff shows that the decisionmaker was aware of the protected conduct, then the plaintiff may use the temporal proximity between that knowledge and the adverse employment action to argue causation. Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003).

174.     Here, Plaintiff engaged in activity that was protected by the First Amendment's Petition Clause.

175.     Plaintiff's speech was on a matter of public concern.

176.     Defendant took materially adverse employment actions against Plaintiff for engaging in protected activity.

177.     Plaintiff's protected activity was a substantial or motivating factor in Defendant's decisions.

178.     Defendant cannot show any legitimate nondiscriminatory reason for its employment practices and any reasons proffered by Defendant for its actions against Plaintiff are pretextual and can readily be disbelieved.

179.     Defendant acted upon a continuing course of conduct.

180.     Moreover, this case unquestionably involves official policy: the City, the PPD, and their policymaking officials (1) directed that the violations occur; (2) authorized the violations; (3) agreed to subordinates' decisions to engage in the violations; (4) provided inadequate training; (5) provided inadequate supervision; and (6) failed to adopt needed policies to prevent the violations.

181.     Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendant.

182.     As a result of Defendant's violations of Plaintiffs' Free Speech rights, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff Janelle Newsome demands judgment against Defendant City of Philadelphia and prays for the following relief: (1) actual damages; (2) compensatory damages;

(3) reasonable attorneys' fees; (4) litigation costs; (5) pre- and post-judgment interest; (6) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of the First Amendment; (7) punitive damages; (8) front pay; and (9) all additional general and equitable relief to which Plaintiff is entitled.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by this complaint.

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

IAN M. BRYSON, ESQUIRE
1835 Market Street, Suite 2950
Philadelphia, PA 19103
215-391-4790
ian@dereksmithlaw.com

Dated: November 26, 2019          *Attorneys for Plaintiff and the Proposed Class*

### CONSENT TO JOIN COLLECTIVE ACTION
### FAIR LABOR STANDARDS ACT OF 1938
### 29 U.S.C. § 216(b)

I hereby consent to be a party plaintiff in a lawsuit under the Fair Labor Standards Act concerning my employment with the Philadelphia Police Department to recover all available relief under 29 U.S.C. § 216(b).

Janelle Newsome
PRINT NAME CLEARLY

_Janelle Newsome_
SIGNATURE

1442 ELDRIDGE ST
STREET ADDRESS

PHILA, PA 19149
CITY, STATE AND ZIP CODE

215 317 2835
TELEPHONE NUMBER

Janelleri cardson@gmail.com
EMAIL ADDRESS

