IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JANELLE NEWSOME,** Plaintiff<br><br>v.<br><br>**CITY OF PHILADELPHIA,** Defendant | **CIVIL ACTION**<br><br>**NO. 19-5590** |

MEMORANDUM

Baylson, J.                                                                                                           November 12, 2020

## I. Introduction

Janelle Newsome ("Plaintiff") brings this action on behalf of herself and a class of similarly situated individuals alleging that the City of Philadelphia violated her right to a private, designated space at the Philadelphia Police Department ("PPD") to express breastmilk under the Fair Labor Standards Act. See 29 U.S.C. § 207(r). Stemming from this violation are her other claims, which allege discrimination and disparate treatment on the basis of sex, hostile work environment, and retaliation. The Amended Complaint lists eight counts:

- **Count 1:** Violations of the FLSA's Protections for Nursing Mothers;
- **Count 2:** FLSA Retaliation;
- **Count 3:** Title VII Disparate Treatment;
- **Count 4:** Title VII Hostile Work Environment;
- **Count 5:** Title VII Retaliation;
- **Count 6:** Section 1983 Disparate Treatment;
- **Count 7:** Section 1983 Hostile Work Environment; and
- **Count 8:** First Amendment Retaliation

Plaintiff filed her Amended Complaint on February 17, 2020. Defendant moved to dismiss the Complaint on March 2, 2020. Plaintiff responded in Opposition to Defendant's Motion to Dismiss on March 16, 2020. On this date, she also filed a Motion to Supplement to the First Amended Complaint (including her proposed supplemental factual pleadings); this Court granted

1

that Motion on March 25, 2020. That Order also allowed ninety additional days for briefing due to COVID-19. On July 30, 2020, this Court issued another Order requiring that all pleadings regarding the Motion to Dismiss be filed by August 21, 2020. On August 21, 2020, Defendant filed a Supplemental Motion to Dismiss. (Def.'s Supp. Mot. to Dismiss at 1, ECF No. 13).

## II. Factual Background

Plaintiff started working as a PPD officer in December 2014. (Am. Compl. ¶ 38). In July 2018, she gave birth to her child, and returned to work from maternity leave in January 2019. (Am. Compl. ¶ 39–40). Upon her return, she was detailed to the Neighborhood Services Unit on restricted duty. (Am. Compl. ¶ 40). She was still breastfeeding her infant and planned to do so until her child turned one in July 2019. (Am. Compl. ¶ 40).

### A. Lack of Nursing Space

Plaintiff alleges that she informed her PPD supervisor, Sergeant Gibbons, that she would need to pump breastmilk at work and requested accommodations. (Am. Compl. ¶ 44). He told her "We'll figure something out," but nobody from PPD followed up to provide accommodations for Plaintiff. (Am. Compl. ¶ 44).

Plaintiff began to pump in colleagues' offices, and experienced frequent interruptions. (Am. Compl. ¶¶ 46–47, 49). Later, Sgt. Gibbons told Plaintiff and another nursing officer to pump in a male officer's office. (Am. Compl. ¶ 50). They were also told to "pump at the same time in the same room." (Am. Compl. ¶ 50). A male officer then told Plaintiff and Officer Allen that "people need to get into the office you're pumping in during the time that you pump," and told them to pump in a female coworker's office. (Am. Compl. ¶ 53). The female civilian coworker told Plaintiff and her coworker to pump elsewhere. (Am. Compl. ¶ 53). When the women brought

this to Sgt. Gibbon's attention, he replied that the coworker "ha[d] to" let them pump in her office but did not take any further action to address the situation. (Am. Compl. ¶ 59).

Sgt. Gibbons also told Plaintiff and Officer Allen that if they wanted to pump in private, they had to retrieve a privacy sign from an office that belonged to three male officers and return the sign there afterwards. (Am. Compl. ¶ 55). Plaintiff and Officer Allen asked Sgt. Gibbons if they could store the sign in the female coworker's office instead, and he replied that he didn't want to hear that coworker "making a big fuss about the sign" and that he wanted "to avoid hearing her mouth." (Am. Compl. ¶ 55).

When Plaintiff, her coworker, and a third female officer approached Sgt. Gibbons to address the frequent interruptions and negative statements about their need to pump at work, Sgt. Gibbons said he would not "address it with anyone because [he] would be kicked out of the unit," and that when he "spoke[] up before [he] was backstabbed and [disciplined.]" (Am. Compl. ¶ 56). When Plaintiff and Officer Allen again raised with Sgt. Gibbons their perception that they had not been given pumping accommodations, he responded that by law, he only had to provide them ten minutes to pump. (Am. Compl. ¶ 60). When Plaintiff explained that pumping could take up to thirty minutes, Sgt. Gibbons changed the subject and continued to fail to provide accommodations. (Am. Compl. ¶ 60).

Around April 29, 2019, Plaintiff and her coworker were instructed to pump in the building's lunchroom during lunch hour. (Am. Compl. ¶ 61). Plaintiff was interrupted by coworkers trying to enter the lunchroom during their own lunch hour, who gathered outside, knocked on the door, and asked "What's going on in there?" (Am. Compl. ¶ 61).

As a result of the absence of designated nursing areas at the PPD, Plaintiff stopped pumping at work altogether, and only pumped at night when arrived home. (Am. Compl. ¶ 67). On several

occasions, Plaintiff and Officer Allen were forced to take sick leave to pump at home. (Am. Compl. ¶ 68–69).

### B. Alleged Retaliation

Plaintiff filed an EEOC complaint and received a right-to-sue letter. (Am. Compl. ¶¶ 10–11). Shortly thereafter, in December 2019, the PPD denied several requests for an extension of her restricted duty status, which was on due to a head injury she suffered on the job. (Am. Compl. ¶ 71). From about January 8, 2020 to January 15, 2020, the PPD sent Plaintiff home from work without pay.[1] (Am. Compl. ¶ 72). Plaintiff attempted to return to work between January 16, 2020 until January 27, 2020, but was sent home without pay approximately every two to three days, (Am. Compl. ¶ 73), until February 12, 2020. (Am. Compl. ¶ 74). During this period, PPD made Plaintiff use her accrued personal time to account for the work hours affected. (Am. Compl. ¶ 76). Eventually, PPD placed Plaintiff on leave without pay. (Am. Compl. ¶ 74).

After Plaintiff filed her lawsuit, coworkers and supervisors allegedly ostracized, stigmatized, and ignored her; she was labeled as a "troublemaker." (Am. Compl. ¶ 78–79). Plaintiff was scheduled to be terminated from the PPD in late February 2020, but was ultimately placed on "no duty" status, receiving benefits but no pay. (Supp. Compl. ¶ 22, ECF No. 9; Hr'g re Mot. to Dismiss, Nov. 4, 2020).

### III.   Defendant's Motion to Dismiss Arguments

Defendant argues that Plaintiff's Amended Complaint[2] should be dismissed under Fed. R. Civ. Pro. 12(b)(6) because Plaintiff failed to plead a prima facie case under each of the Complaint's eight counts. The counts are addressed in turn below.

---

[1] Defendant contests this. (Mot. to Dismiss at 4 n.9).
[2] Defendant notes at the outset that it accepts as true the facts as pled in Plaintiff's Complaint for the purposes of this motion. (Mot. to Dismiss at 2 n.1).

**A. Count 1: Violations of the FLSA's Protections for Nursing Mothers**

**1. Defendant's Arguments**

The City argues that Plaintiff did not plausibly allege a violation of the FLSA. (Mot. to Dismiss at 5). The applicable statutory provision is 29 U.S.C. § 207(r)(1), which requires employers to provide

> (A) a reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk; and
> (B) a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk.

29 U.S.C. § 207(r)(1).

Citing subsection (A), the City argues that Plaintiff does not allege she was restricted in the amount of time she was permitted to pump. (Mot. to Dismiss at 6). It argues that although she alleged that Sgt. Gibbons stated the law only required him to provide ten minutes for pumping, she did not allege that she was forced to return to work after ten minutes or otherwise temporally restricted from pumping breastmilk. (Mot. to Dismiss at 6, citing Am. Compl. ¶ 60).

Regarding subsection (B), the City contends that Plaintiff's allegations do not meet the statutory requirements because she does not allege that she was "told, ordered, instructed, or otherwise directed to pump in a space open to public view [or] that she was intruded upon." (Mot. to Dismiss at 9). The City cites Black's Law Dictionary to define "intrusion" as "[a] person's entering without permission," and argues that Plaintiff alleged no entry without intrusion. (Mot. to Dismiss at 6 & n.10). The City argues that two instances of knocking on doors, and uncertainty about where to pump do not violate the statute. (Mot. to Dismiss at 6).

Defendant also argues that Plaintiff has not alleged any injury compensable under the FLSA, and that her claim also fails on that point. (Mot. to Dismiss at 8–9). Appellate courts,

5

including the Third Circuit, have not addressed this issue, and district courts are split on how to resolve it. The complication stems from the fact that the statute provides that employers are not required to pay employees for time spent pumping, see § 207(r)(2), and § 216(b) provides that enforcement of § 207 is limited to "unpaid minimum wages, . . . unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages."

Some courts have read this language as not providing for a private cause of action at all.[3] Other courts have read the statute more expansively.[4] For the reasons explained below, this Court declines to decide that question at this juncture.

### 2. Analysis

Defendant's Motion to Dismiss is denied on this count. Employers must comply with both prongs (A) and (B) of § 207(r), and Plaintiff has pled facts allowing for the inference that PPD did not meet its obligations under prong (B) to provide a place "free from intrusion" for expressing breast milk. These facts include the frequent intrusions Plaintiff experienced when pumping in each location provided, the hostile attitude Plaintiff received from the occupants of spaces she was

---

[3] See, e.g., Salz v. Casey's Mktg. Co., No. 4:11-cv-03055, 2012 WL 2952998, at *2–4 (N.D. Iowa July 19, 2012) ("Since Section 207(r)(2) provides that employers are not required to compensate employees for time spent express milking, and Section 216(b) provides that enforcement of Section 207 is limited to unpaid wages, there does not appear to be a manner of enforcing the express breast milk provisions."); see also Hicks v. City of Tuscaloosa, No 7:13-cv-02063-TMP, 2015 WL 6123209, at *28 (N.D. Ala. Oct. 19, 2015) (referring to the "toothlessness" of § 207(r)(1)).

[4] See, e.g., Lico v. T.D. Bank, No. 14-cv-4729, 2015 WL 3467159 (E.D.N.Y. June 1, 2015) ("[I]f an employee needed to take longer breaks in order to travel to appropriate areas to take a nursing break, and was docked pay as a result, those lost wages would be compensable."); Clark v. City of Tucson, No. CV 14-02543-TUC-CKJ, 2018 WL 1942771, *6 (D. Ariz. 2018) ("Plaintiff's sick leave and vacation time are financial assets, which she allegedly spent to avoid being forced to express milk at noncompliant stations."); see also Lampkins v. Mitra QSR, LLC, No. 16-647-CFC, 2018 WL 6188779, at *5 (D. Del. Nov. 28, 2018) (collecting cases).

told to pump in, and the instruction to pump at the same time as another female officer. (Am. Compl. ¶¶ 46–50, 53, 56, 59, 61–62).

Plaintiff has plausibly alleged a compensable injury under § 207(r), but the Court acknowledges Defendant's argument that this is a complicated question. The lack of a pumping space caused Plaintiff to take time off work to pump, (Am. Complaint ¶ 68–69), and hours of leave have been held to be financial assets. See Clark, 2018 WL 1942771, at *6. In any event, the Court declines to visit this question until/if a later stage of litigation is reached. See Lico, 2015 WL 3467159, at *4 ("[I]t is not the Court's role, in deciding a motion to dismiss, to make specific rulings with respect to the scope of damages available . . . . It is sufficient . . . that plaintiff has plausibly alleged a legally cognizable injury under § 207(r).").

**B. Count 2: FLSA Retaliation**

Defendant also argues that Plaintiff has not made out a plausible claim for retaliation under the FLSA because she has not pled the necessary element of an adverse employment action.[5] (Mot. to Dismiss at 11).

The Court will not dismiss this count either. The Third Circuit has broad view of what constitutes an adverse employment action. See Henley v. Brandywine Hosp., No. 18-4520, LLC, 2019 WL 3326041, *9–10 (E.D. Pa. July 24, 2019) (explaining various kinds of adverse employment actions, such as "[t]ermination, failure to promote,[ ] failure to hire[,] ... [and] actions that reduce opportunities for promotion or professional growth can constitute adverse employment

---

[5] A Plaintiff asserting a prima facie claim of retaliation under the FLSA must show three elements: (1) that she engaged in activity protected by the FLSA; (2) that she suffered adverse action by the employer subsequent to or contemporaneous with the protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action. See 29 U.S.C. § 215; Berrada v. Cohen, 792 F. App'x 158, 164 (3d Cir. 2019) (citing Darveau v. Detecon, 515 F.3d 334, 340 (4th Cir. 2008)).

actions" (quoting Walker v. Centocor Ortho Biotech, Inc., 558 F. App'x 216, 219 (3d Cir. 2014))) (Baylson, J.).

Plaintiff has alleged that she was denied extensions of her restricted duty status, (Am. Compl. ¶ 71), that she was sent home from work without pay, (Am. Compl. ¶ 72–74), that she was placed on leave without pay (Am. Compl. ¶ 75), that she was forced to use her accrued personal time to account for these hours when she sent home without pay (Am. Compl. ¶ 76), and that she suffered reputational harm and stigmatization (Am. Compl. ¶ 79–80). And, Plaintiff was placed on "no duty" status by the PPD in late February 2020. (Supp. Compl. ¶ 22, ECF No. 9; Hr'g re: Mot. to Dismiss, Nov. 4, 2020). Her pleading suggests that her self-reported accidental THC ingestion was a pretext for termination, as she followed PPD's self-reporting policy, and drug testing showed she was not a habitual THC user. (Supp. Compl. ¶¶ 11–14, 17).

The Court notes that the Amended Complaint does not crystallize a "causal connection" between the employee's activity and the City's alleged adverse action. As discussed at the November 4, 2020 hearing, the Court grants leave to file a Second Amended Complaint to clarify Plaintiff's argument on this count.

### C. Count 5: Title VII Retaliation

Defendant also argues that Plaintiff did not plead sufficient facts to bring a Title VII Retaliation claim, specifically, on the "materially adverse" action element.[6] (Mot. to Dismiss at

---

[6] Prima facie claims of retaliation under Title VII require a slightly different second element than FLSA retaliation. Under Title VII, the plaintiff need not prove an ultimate adverse employment action, because the scope of Title VII's provision extends beyond employment-related retaliatory acts. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006). Instead, the plaintiff only needs to prove a "materially adverse" action, which only means it "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Id. at 68 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The first and third elements are the same. See Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 320 (3d Cir. 2008) ("To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she

18).  Since the Title VII standard is broader than the FLSA's, this Court will not dismiss this count for the same reasons as the FLSA retaliation count, discussed supra at B.  Without repeating the facts again, it appears that Plaintiff did plead several potentially materially adverse actions.  See supra, at B.

Again, the Court notes that the Amended Complaint does not crystallize a "causal connection" between the employee's activity and the City's alleged adverse action.  As discussed at the November 4, 2020 hearing, the Court grants leave to file a Second Amended Complaint to clarify Plaintiff's argument on this count.

### D.  Count 3: Title VII Disparate Treatment

For the same reasons discussed above at supra, Part B, Defendant argues that Plaintiff's Title VII Disparate Treatment claim fails because it also requires an adverse employment action. See Henley v. Brandywine Hosp., No. 18-4520, LLC, 2019 WL 3326041, *9 (E.D. Pa. July 24, 2019) (discussing the elements of Title VII disparate treatment claims when plaintiffs lack direct evidence of discrimination) (Baylson, J.).  As discussed above regarding Counts 2 and 5, see supra, the Court will also not dismiss this count.  Plaintiff has pled facts that allow for an inference of an adverse employment action.

---

engaged in a protected activity under Title VII; (2) the employer took an adverse action against her; and (3) there was a causal connection between the employee's participation in the protected activity and the adverse employment action.").

### E. Count 4: Title VII Hostile Work Environment & Count 7: Section 1983 Hostile Work Environment[7]

Defendant argues that Plaintiff has failed to plead both Title VII and § 1983 hostile work environment claims because she has not alleged facts that meet two of the five elements required.[8] (Mot. to Dismiss 15). Specifically, the City argues Plaintiff has not pled adequately "severe or pervasive conduct," nor "intentional discrimination." (Mot. to Dismiss 16–17).

The Court agrees and dismisses these counts. Plaintiff did not plead facts that suggested reactions toward her pumping needs—although offensive—went beyond inconvenience, impatience, or irritation at best. See Castleberry v. STI Grp., 863 F.3d 259, 264 (3d Cir. 2017) ("Whether an environment is hostile requires looking at the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'") (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

### F. Count 6: Section 1983 Disparate Treatment

Defendant argues that Plaintiff has not pled a plausible § 1983 Disparate Treatment claim because she has not alleged an "policy . . . , ordinance, regulation, or decision officially adopted and promulgated by [the local government's] officers" that has caused her disparate treatment.

---

[7] The analysis is the same for hostile work environment claims brought under either provision. See Starnes v. Butler Cty. Ct. of C.P., 50th Jud. Dist., 971 F.3d 416, 428 (3d Cir. 2020) ("[Section] 1983 shares the same elements for discrimination purposes as a Title VII action.")

[8] A prima facie hostile work environment claim requires a plaintiff to plead five elements: (1) intentional discrimination based on sex; (2) severe or pervasive conduct; (3) a detrimental effect on the plaintiff; (4) a detrimental effect on a reasonable person in similar circumstances; and (5) the existence of *respondeat superior* liability. Chinery v. Am. Airlines, 778 F. App'x 142, 145 (3d Cir. 2019) (citing Mandel v. M & Q Packaging Corp., 706 F.3d 167 (3d Cir. 2013).

(Mot. to Dismiss at 21).⁹ See Eldridge v. Mun. of Norristown, 828 F. Supp. 2d 746, 763 (E.D. Pa. Nov. 10, 2011) ("Municipality liability attaches under § 1983 only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'") (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). Still, when the absence of action denies individuals their constitutional rights, the failure to act can amount to a "policy or custom" as well. See Simmons v. City of Philadelphia, 947 F.2d 1042, 1060–61 (3d Cir. 1991). The failure to educate municipal officers in proper practices can provide for a § 1983 claim when that failure amounts to "deliberate indifference" or a "conscious" choice on the part of the municipality. See City of Canton v. Harris, 489 U.S. 378, 388–89 (1989); see also Williams v. Ponik, No. 19-1159, 2020 WL 4930253, *4 (3d Cir. Aug. 24, 2020) (discussing this standard).

Plaintiff has not alleged any facts that there is any written or unspoken "policy or custom" in place to deny nursing women access to pumping rooms, nor has she pleaded facts suggesting the failure to train supervisors on nursing mothers' rights under the FMLA amounts to "deliberate indifference." While the facts suggest the PPD did not perfectly execute its duties under the FMLA, the Court cannot go so far as to say that its attempts at doing so were deliberately indifferent to the needs of mothers who needed to express milk. This Count is therefore dismissed.

### G. Count 8: First Amendment Retaliation Claim

Defendant argues that Plaintiff did not plead a plausible claim under the First Amendment because she did not engage in speech protected by the First Amendment¹⁰ nor did the City retaliate

---

⁹ Defendant also briefly suggests that Plaintiff did not establish that any such policy or practice was the proximate cause of her injury but does not develop this argument. (Mot. to Dismiss 21–22).

¹⁰ "Where a public employee claims First Amendment retaliation by a government employer, the plaintiff-employee must demonstrate that he 'spoke as a citizen on a matter of public concern' for

11

against her for engaging in such speech. First, the City contends that Plaintiff's speech is not protected at all, because she did not speak as a citizen; rather, she spoke as a city employee. Second, it contends that her speech did not implicate a matter of public concern. Last, the city argues that Plaintiff alleged no facts to show that she was treated differently than any other member of the general public.

The Court agrees that Plaintiff did not plead facts to show that she spoke as a citizen. The Third Circuit makes a "practical inquiry" into whether speech is ordinarily within the scope of an employee's duties. De Ritis v. McGarrigle, 861 F.3d 444, 453 (3d Cir. 2017). Second, it also does not appear that Plaintiff has pled a matter of public concern. That standard is quite high, and the matter "must relate to 'a subject of general interest and of value and concern to the public.'" Id. at 455. Day-to-day employment grievances do not suffice, and the tone of communication is irrelevant. Id. Because the Court agrees with Defendant and dismisses this Count on the first two elements, it will not go into the Third Circuit's balancing test for the third element. See generally id. at 456–57 (discussing the balancing test).

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss without prejudice as to Counts II (FLSA Retaliation), IV (Title VII Hostile Work Environment), V (Title VII Retaliation), VI (§ 1983 Disparate Treatment), VII (§ 1983 Hostile Work Environment), and VIII (First Amendment Retaliation), but **DENIES** the Motion to Dismiss as to Counts I (FLSA Violations) and III (Title VII Disparate Treatment).

---

his activity to be protected by the First Amendment." Alers v. City of Philadelphia, 919 F. Supp. 2d 528, 553 (E.D. Pa. 2013) (citing Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 385 (2011).

It is further **ORDERED** that Plaintiff submit an Amended Complaint in order to more clearly plead a causal connection within the retaliation counts (Counts II and V).

An appropriate Order follows.

O:\CIVIL 19\19-5590 Newsome v. City of Philadelphia\19cv5590 memo post hearing.docx