**DEREK SMITH LAW GROUP, PLLC**
IAN M. BRYSON, ESQUIRE
Attorney ID No. 321359
1835 Market Street, Suite 2950
Philadelphia, PA 19103
(215) 391-4790
ian@dereksmithlaw.com
*Attorneys for Plaintiff and the Proposed Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANELLE NEWSOME, *individually and on behalf of others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PHILADELPHIA,<br><br>Defendant. | Civil Action No. 19-5590<br><br>**SECOND AMENDED COLLECTIVE ACTION COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF *and* DAMAGES** |

## NATURE OF THE ACTION

1. Plaintiff Janelle Newsome brings this suit individually and on behalf of others similarly situated as a collective action seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. ("FLSA") contending that the Philadelphia Police Department has systematically and willfully failed to provide nursing female police officers with "reasonable break time to express breast milk for their nursing children for 1 year after the child's birth each time such employee has need to express the milk," and has further failed to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by employees to express breast milk." 29 U.S.C. § 207(r)(1)(A) and (B).

1

2.  Plaintiff also brings this action for personal relief from sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"); and the Philadelphia Fair Practices Ordinance, Philadelphia Code §§ 9-1101 et seq. ("PFPO").

3.  Plaintiff seeks injunctive and declaratory relief, compensatory damages, punitive damages, liquidated damages, statutory penalties, reasonable attorneys' fees, litigation costs and pre- and post-judgment interest.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C §§ 1331 and 1343.

5.  The Court has supplemental jurisdiction over Plaintiff's PHRA and PFPO claims pursuant to 28 U.S.C. § 1367 because they arise out of the same nucleus of operative facts as Plaintiff's FLSA and Title VII claims.

6.  Plaintiff's action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, Rules 57 and 65 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

7.  Venue in this Court is proper under 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendant is subject to personal jurisdiction here.

## PARTIES

8.  Plaintiff Janelle Newsome is an adult individual resident of Philadelphia County and a citizen of the Commonwealth of Pennsylvania. Pursuant to Section 216(b) of the FLSA,

Plaintiff has consented in writing to be a party in this action. Her executed Consent to Sue form is attached hereto as Exhibit "A."

9. Defendant City of Philadelphia ("the City") is a municipality of the Commonwealth of Pennsylvania. The City owns, operates, manages, directs and controls the Philadelphia Police Department ("the PPD"), whose agents, servants and employees at all relevant times were acting within the course and scope of their employment under color of state law and operating pursuant to official policies, customs or practices of the City and the PPD.

10. Plaintiff was an "employee" and Defendant was an "employer" covered by the FLSA and Title VII.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Ms. Newsome timely filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") alleging violations of Title VII, the PHRA, and the PFPO.

12. EEOC issued Ms. Newsome a Notice of Right to Sue Within 90 Days. Additionally, more than one year has elapsed since PHRC assumed jurisdiction over Plaintiff's charges and therefore her PHRA and PFPO claims are now ripe.

13. Ms. Newsome has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

## FLSA COLLECTIVE ACTION ALLEGATIONS

14. On August 20, 2019 Philadelphia Mayor Jim Kenney announced the abrupt resignation of Police Commissioner Richard Ross Jr. amid reports of discrimination within the police department.[1]

15. "Last summer, the City implemented a new sexual harassment prevention policy and a series of internal reforms designed to prevent workplace discrimination and harassment throughout the government. While rolling out a new policy understandably takes time, I do not believe the Police Department has taken the necessary actions to address the underlying cultural issues that too often negatively impact women . . ."[2]

16. The PPD employs over 6300 sworn members, approximately 35% of which are women.

17. There are eleven different ranks in the PPD in the following order, beginning at the entry level position of Police Officer and ending with Police Commissioner: (1) Police Officer; (2) Detective; (3) Corporal; (4) Sergeant; (5) Lieutenant; (6) Captain; (7) Staff Inspector; (8) Inspector; (9) Chief Inspector; (10) Deputy Commissioner; and (11) Commissioner. The City's Office of Human Resources provides the following job class specification for Police Officer:

GENERAL DEFINITION

This is general duty police work on an assigned shift involving the protection of life and property, enforcement of laws, and investigation of crimes. Work is performed under the supervision of a police officer of higher rank. The employee has a controlling impact on the prevention of crime within an assigned area. Work requires regular exposure to uncontrolled and/or unpredictable conditions and the frequent exercise of moderate physical effort. The essential functions and tasks required for the position of police officer, include, but are not limited to, qualification and use of firearms, patrolling and apprehension of suspects.

[1] Office of the Mayor, *Mayor Announces Resignation of PPD Commissioner Richard Ross, Jr.*, https://www.phila.gov/2019-08-20-mayor-announces-resignation-of-ppd-commissioner-richard-ross-jr/

[2] Id.

Employees in this class must also comply with Commonwealth municipal police officer certification requirements

ALLOCATING FACTORS

Positions in this class must be able to perform the essential and physical functions of the job.

TYPICAL EXAMPLES OF WORK

Patrols a designated area of the city, on foot, bicycle, segway or horseback, or in a car, motorcycle, or police boat to prevent and discover the commission of crime and to enforce traffic and parking regulations; answers calls and complaints, taking the necessary police action.

Takes proper police action at scene of crime, administers first aid, gathers evidence, locates witnesses and makes arrest; appears in court to present evidence and testify against persons accused of crimes.

Investigates persons suspected of being engaged in gambling, illegal sale of liquors, or other vice activities; checks the operation of taverns, poolrooms, dance halls, clubs, and similar establishments for compliance with laws and ordinances.

Ascertains validity of information or secures evidence for the arrest of persons alleged to have committed a crime; searches for and preserves evidence; interviews suspects, prisoners, complainants, and witnesses, takes information or secures evidence for the arrest of persons alleged to have committed a crime; searches for and preserves evidence; interviews suspects, prisoners, complainants and witnesses to obtain information about crimes; reports automobile accidents, interviews witnesses, takes information, and makes detailed reports.

Investigates complaints concerning juveniles; discusses the case with complainant, juvenile, parents and others who may be able to aid in the case; investigates crimes by and against juveniles; testifies in court concerning case, visits neighborhood boys' clubs and recreation centers, counseling leaders on juvenile problems.

Writes detailed reports of automobile accidents in cases where personal injuries or property damage is apparent.

Works with community residents, business owners and other City employees to solve problems of crime and disorder.

Performs all duties and responsibilities at the highest level of personal and professional ethics.

Uses computer systems to identify crime patterns, analyzes the nature of crime and disorders, problems and obtains information relevant to crime control and prevention.

May serve in the district operations office to perform necessary clerical procedures connected with police work.

Performs related work as required.

REQUIRED KNOWLEDGE, SKILLS AND ABILITIES

KNOWLEDGE OF:

- the use, care and safe handling of firearms and other equipment used in the performance of essential tasks;
- the laws controlling, and the procedures, practices and techniques necessary to police patrol operations;
- the laws, codes, statutes and regulations concerning criminal activity, especially when they apply to law enforcement operations;
- the criminal justice system as it applies to law enforcement operations;
- the techniques, practice and procedures necessary to the effective interaction with the general public, victims, suspects, and officers of other agencies and municipalities; and
- duty manuals, departmental organizations, administrative direction and applicable City ordinances.

SKILL IN:

- the use and care of firearms and other equipment used in the performance of essential tasks

ABILITY TO:

- cope with situations firmly, courteously, tactfully and with respect for the rights of others;
- analyze situations quickly and objectively, and to determine a proper course of action to be taken;
- understand and carry out oral and written instructions;
- write and speak effectively;
- learn clerical procedures connected with police work;
- make arrests;
- take necessary police action to prevent the commission of a crime, including use of a firearm where needed;
- patrol streets on foot;
- respond to emergency situations;
- use firearms and other weapons as needed;
- operate equipment in the performance of essential tasks;

- perform the essential and physical functions of the job;
- identify, analyze and respond to crime and disorder problems; and
- use computer systems to obtain necessary information in the performance of the position.

MINIMUM ACCEPTABLE TRAINING AND EXPERIENCE

**For employees hired from eligible lists for Police Officer Recruit initially established before 2012:**

EDUCATION: Education equivalent to standard high school.

AND

TRAINING: Recent successful completion of training as a Police Officer Recruit at the City of Philadelphia Police Academy.

OR

CERTIFICATION: Possession of Pennsylvania Municipal Police Officers' Certification from the Pennsylvania Municipal Police Officers Education and Training Commission prior to appointment and during tenure of employment as a Police Officer 1.

**For employees hired from eligible lists for Police Officer Recruit initially established during or after 2012 or from Police Officer 1 eligible lists initially established during or after 2011:**

Option 1

TRAINING: Recent successful completion of training as a Police Officer Recruit at the City of Philadelphia Police Academy.

OR

Option 2

EDUCATION:  Education equivalent to completion of a standard high school.

AND

EXPERIENCE: One year of full time employment as a commonwealth or state certified Law Enforcement Officer which has been within the three year period immediately prior to the thirtieth (30) day after the last date for filing applications for the examination for this class.

AND

CERTIFICATION: Possession of a commonwealth or state Law Enforcement Officers' Certification.

PHYSICAL AND MEDICAL REQUIREMENTS

Ability to meet the physical and medical standards approved for this class.

Age—Must have reached Nineteenth (19th) Birthday as of the date of appointment.

LICENSES, REGISTRATIONS AND/OR CERTIFICATES

Possession of Pennsylvania Municipal Police Officers' Certification from the Pennsylvania Municipal Police Officers Education and Training Commission prior to appointment and during tenure of employment as a Police Officer 1.

Initial and annual qualification on a police firearms course, by a certified police firearms instructor, with any firearms, shotguns, rifles authorized for use including personal weapons carried in lieu of issued weapons or as a second weapon.

Possession of a valid proper class motor vehicle operator's license as issued by the Commonwealth of Pennsylvania within 60 days of establishing Pennsylvania residency and during tenure of employment as a Police Officer 1.
Preferred License

Possession of a valid proper class motor vehicle operator's license from any state at least three years prior to appointment as a Police Officer 1.

See City of Philadelphia Office of Human Resources Personnel Job Class Specifications, *Police Officer 1*, https://www.phila.gov/personnel/specs/6A02.htm

18. Pursuant to 29 U.S.C. §§ 216(b) and 207(r) of the FLSA, Ms. Newsome brings this action

individually and on behalf of other similarly situated female Police Officers employed by

the PPD during the past three years who were or continue to be denied their rights under

the FLSA's "Break Time for Nursing Mothers" provision, which requires employers to

provide (1) "reasonable break time for an employee to express breast milk for her nursing

child for 1 year after the child's birth each time such employee has need to express the

milk"; and (2) "a place, other than a bathroom, that is shielded from view and free from

intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 207(r)(1)(A) and (B).

19. The members of the putative class are hereinafter referred to as "Collective Class Plaintiffs."

20. Plaintiff estimates that there are in excess of 500 other similarly situated Collective Class Plaintiffs who are working or worked for the PPD and are or were unlawfully denied their rights under the FLSA's Break Time for Nursing Mothers provision, 29 U.S.C. § 207(r).

21. The precise number of employees can be easily ascertained by Defendant. These employees can be identified and located using Defendant's payroll and personnel records. Potential Collective Class Plaintiffs may be informed of the pendency of this Collective Action by direct mail and/or publication.

22. Pursuant to 29 U.S.C. § 216(b), this action is properly maintained as a collective action because all class members are similarly situated. Plaintiff and other similarly situated female Police Officers (1) were and continue to be similarly denied reasonable break time to express breast milk for their nursing children for 1 year after birth each time the need arises, and also denied a private place, other than a bathroom, to do so; (2) had the same or substantially similar job classifications and duties; and (3) are subject to the same uniform policies, business practices, payroll practices, and operating procedures.

23. Further, Defendant's willful policies and practices, which are discussed more fully below, whereby Defendant denied and continues to deny Plaintiff and Collective Class Plaintiffs their rights under the FLSA's Break Time for Nursing Mothers provision, affected and continue to affect Plaintiff and Collective Class Plaintiffs in the same fashion.

24. In violation of the FLSA, Defendant fails to provide Plaintiff and Collective Class Plaintiffs "reasonable break time to express breast milk for [their] nursing child[ren] for 1 year after the child's birth each time such employee has need to express the milk." 29 U.S.C. § 207(r)(1)(A) and (B).

25. In violation of the FLSA, Defendant also fails to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by [Plaintiff and Collective Class Plaintiffs] to express breast milk." 29 U.S.C. § 207(r)(1)(B).

26. In violation of the FLSA, Defendant also fails to post notices explaining the Act in conspicuous places in every establishment where its police officers are employed so as to permit them to observe readily a copy. 29 CFR § 516.4.

27. These policies and practices are unequivocal evidence of Defendant's systematic, willful and improper failure to follow the provisions of the FLSA.

28. Plaintiff will request the Court to authorize notice to all current and former similarly situated female Police Officers employed by the PPD in the last three years to inform them of the pendency of this action and their right to "opt in" to this lawsuit pursuant to 29 U.S.C. § 216(b) for the purpose of seeking actual damages, liquidated damages, attorneys' fees, litigation costs, declaratory and injunctive relief, employment consistent with the FLSA, and all other relief available.

## DECLARATORY RELIEF ALLEGATIONS

29. This lawsuit presents an actual controversy between Plaintiff and Collective Class Plaintiffs against Defendant concerning their rights and respective duties.

30. While there is a dearth of cases that discuss the appropriateness of a claim for declaratory relief in an FLSA case, the Supreme Court found in <u>Public Affairs Associates v. Rickover</u>, 369 U.S. 111 (1962) that the Declaratory Judgment Act authorizes federal courts to make declarations of rights as to impending conduct on a discretionary basis. 369 U.S. at 112; <u>see</u> <u>also</u> <u>Salazar-Martinez v. Fowler Brothers, Inc.</u>, 2011 WL 915675 (W.D.N.Y. Mar. 15, 20l1) (denying motion to dismiss declaratory relief count in an FLSA case).

31. Plaintiff and Collective Class Plaintiffs face continuing harm during employment by Defendant.

32. Declaratory relief is therefore necessary and appropriate.

## <u>INJUNCTIVE RELIEF ALLEGATIONS</u>

33. If Defendant's conduct is allowed to continue Plaintiff and Collective Class Plaintiffs will be subject to significant and irreparable harm to their federally protected rights for which no adequate remedy at law exists.

34. By depriving Plaintiff and Collective Class Plaintiffs of employment consistent with the FLSA, Title VII, the PHRA and the PFPO, Defendant will inflict significant and irreparable medical, emotional, dignitary, and other harms for which no adequate remedy at law exists.

35. Injunctive relief is therefore necessary and appropriate.

## <u>FACTUAL BACKGROUND</u>

36. The PPD has no policy or directive in place to provide basic accommodations for breastfeeding mothers like Ms. Newsome.

37. The PPD does not provide accommodations for nursing mothers like Ms. Newsome—it does not provide time for women to express milk, nor does it provide private space that is not a bathroom each time women need to pump.

38. The PPD does not provide notice of nursing mothers' rights.

39. On December 22, 2014, Ms. Newsome started working for the PPD as a Police Officer assigned to the 18th District.

40. In July 2018, Ms. Newsome gave birth to her child.

41. In January 2019, Ms. Newsome returned to work from leave and was detailed to the PPD's Neighborhood Services Unit on restricted duty. She was still nursing her infant child and expected to do so until her child reached age one in July 2019.

42. Upon returning to work, Ms. Newsome experienced ongoing pregnancy discrimination, harassment and retaliation regarding her need to express milk at work.

43. Defendant denied Ms. Newsome reasonable break time to express breast milk for her nursing child for 1 year after the child's birth each time she had the need to express the milk.

44. Defendant also denied Ms. Newsome a private place, other than a bathroom, that was shielded from view and free from intrusion from coworkers and the public that she could use to express breast milk.

45. When Ms. Newsome arrived at the Neighborhood Services Unit, she informed her supervisor, Sergeant Herbert Gibbons, that she would need to pump at work and requested accommodations. Because the PPD does not provide accommodations for nursing mothers, Sergeant Gibbons failed to apprise Ms. Newsome of her right to take time to express milk in a private space each time she needed to pump. Rather, Sergeant

Gibbons stated, "We'll figure something out," and at no time thereafter did Defendant

provide accommodations for Ms. Newsome.

46. As a result, Ms. Newsome was forced to express milk at irregular times or not at all; and

had to pump in unsanitary bathrooms and locker rooms, or in places where she was

constantly interrupted and embarrassed by coworkers.

47. For example, Ms. Newsome attempted to pump in an office that was frequently used by

the building's all-male tech crew, who stated "we're going to be in here for a while."

Occasionally, when the room was vacant, Ms. Newsome was interrupted by the all-male

tech crew who frequently knocked on the door; asked, "When are you going to be done?"

48. Unreasonably frequent interruptions rendered it difficult or impossible for Ms. Newsome

to express milk and restricted the amount of time she was permitted to do so.

49. Moreover, unreasonably frequent interruptions restricted Ms. Newsome's right to be free

from intrusion from coworkers while pumping.

50. As a result, Ms. Newsome was frequently forced to pump in the restroom or was unable

to pump at all.

51. By way of further example, on another occasion, Sergeant Gibbons instructed Ms.

Newsome and another nursing mother—Officer Jennifer Allen—to "pump in Officer

John Whipple's office." The same day, or shortly thereafter, Ms. Newsome and Officer

Allen were asked, "Were you notified that you had to start pumping in Mary's (a civilian

coworker) office?" Ms. Newsome and Officer Allen were also told "You should pump at

the same time in the same room."

52. Upon hearing this, Ms. Newsome became concerned that her supervisors and coworkers

did not support her need to pump at work and that her ability to do so was in jeopardy.

13

Ms. Newsome and other nursing mothers rely on a positive, accepting attitude from supervisors and coworkers to feel confident in the ability to continue working while breastfeeding. Ms. Newsome and other nursing mothers also rely on consistent availability of a private space to pump. These accommodations are not provided by the PPD.

53. Defendant's request that Ms. Newsome and other nursing mothers "pump at the same time in the same room" violates the FLSA's requirement that the lactation space be private, shielded from view and free from intrusion from coworkers.

54. By way of further example, on another occasion, another police officer, Officer Martin, told Ms. Newsome and Officer Allen that "people need to get into the office you're pumping in during the time that you pump," and directed them to "pump in Mary's office from now on." Mary told Ms. Newsome and Officer Allen to look for a different place to pump.

55. The unavailability of a designated lactation space restricted Ms. Newsome's right to express milk each time she had the need to express the milk.

56. By way of further example, on another occasion, Sergeant Gibbons told Ms. Newsome and Officer Allen that if they wanted privacy they would need to retrieve a privacy sign from an office occupied by three male officers each time they needed to pump and return the sign to the three male officers each time they were finished. Ms. Newsome and Officer Allen found this arrangement to be extremely demeaning. They asked Sergeant Gibbons if they could store the sign in a female coworker's office and Sergeant Gibbons said he "doesn't want to hear Mary making a big fuss about the sign," and that he "wants to avoid hearing her mouth."

14

57. By way of further example, on another occasion, Ms. Newsome, Officer Allen and
Officer Tanya Richardson approached Sergeant Gibbons about their coworkers' frequent
interruptions and negative statements regarding their need to express milk at work. They
requested that Sergeant Gibbons address the issue with their coworkers. In response,
Sergeant Gibbons stated, "I won't address it with anyone because I would be kicked out
of the unit." He further stated, "Anytime I have spoken up before I was backstabbed and
given 18's (disciplined)."

58. These frequent negative interactions regarding Ms. Newsome's and Officer Allen's rights
caused both women to cry at work on several occasions. Because Defendant subjected
Ms. Newsome to consistent ridicule and embarrassment she was unable to express milk
for her nursing child each time she needed to express the milk.

59. Moreover, supervisor Sergeant Gibbons' statement that he would be disciplined for
accommodating the needs of nursing mothers is just one example of the PPD's policy and
practice of violating the rights of nursing mothers.

60. By way of further example, on another occasion, Sergeant Gibbons lied to Ms. Newsome
and Officer Allen stating, "Effective immediately you will pump in Mary's office, a
permanent sign will be made that will hang on the door, and you will each have keys to
the office. You can pump whenever you want to." This conversation occurred in late-
April 2019, approximately 4 months after Ms. Newsome had returned to work from
leave. The accommodations Sergeant Gibbons promised were never put into place. Ms.
Newsome and Officer Allen asked Sergeant Gibbons "if Mary had been notified that we
were to pump in her office," and Sergeant Gibbons said "yes." However, when Ms.
Newsome and Officer Allen attempted to use Mary's office, Mary stated, "I have work to

do, you have to use another office." Officer Allen informed Sergeant Gibbons that "Mary said we can't use her office," and Sergeant Gibbons responded, "she has to," but took no further action to remedy the situation. He did not provide Ms. Newsome and Officer Allen with keys or a permanent sign as he had promised. He did not instruct Mary to allow the women to pump in her office.

61. By way of further example, on another occasion, Ms. Newsome and Officer Allen again complained to Sergeant Gibbons that they had not been given the basic accommodations that he had promised. Ms. Newsome stated, "You said provisions would be made for us." In response, Sergeant Gibbons said, "By law, I only have to give you 10 minutes." Ms. Newsome responded, "10 minutes is not long enough to begin the flow of milk—it could take me up to 30 minutes." Sergeant Gibbons changed the subject and failed to provide accommodations. Sergeant Gibbons implied by his words and actions that he would continue to refuse to provide Ms. Newsome accommodations consistent with the FLSA.

62. By way of further example, around April 29, 2019, Ms. Newsome and Officer Allen were instructed to pump in the building's unsanitary lunchroom during lunch hour. Ms. Newsome was exposed to incessant interruptions by coworkers attempting to gain access to the lunchroom during their lunch hour who started gathering outside, knocking on the door and asking, "What's going on in there?"

63. When Ms. Newsome opened the door to the lunch room, one employee who had been waiting outside said "FINALLY" and groaned. The employee then asked Ms. Newsome, "Can I come in when you're pumping because I'm a woman?"

64. The PPD is responsible for alerting employees about the employer's worksite lactation program (which the PPD does not have) and for negotiating policies and practices to help

facilitate each employee's infant feeding goals. Defendant failed to meet these requirements.

65. The PPD is responsible for knowing exactly how to support employees like Ms. Newsome, including educating all staff about the importance of respecting a coworker's privacy while pumping and providing coverage during lactation breaks. Defendant failed to meet these requirements.

66. The PPD is responsible for ensuring that all employees will assist in providing a positive atmosphere of support for breastfeeding employees like Ms. Newsome. Defendant failed to meet these requirements.

67. The PPD's ongoing failure to provide Ms. Newsome with consistent, private and sanitary lactation space caused her extreme anxiety and uncertainty about her ability to continue breastfeeding her child. Breastfeeding and working takes a lot of time, coordination and dedication from a mother. A lactation space is necessary because in order to begin the flow of milk, mothers must be able to sit down and relax, and not be stressed. Mothers such as Ms. Newsome who are placed in an open or uncomfortable space, or who are worried about hostility from coworkers, may not be able to pump milk or may not be able to pump milk as quickly.

68. As a result of the PPD's failure to designate private, sanitary rooms for nursing employees like Ms. Newsome to express breast milk at work, Ms. Newsome was forced to stop pumping at work altogether. For the next several months she could only pump at nighttime when she arrived home from work.

69. On several occasions, Ms. Newsome was forced to take sick leave to pump at home.

70. Officer Allen also was forced to stop pumping at work and took leave to pump at home.

71. After Ms. Newsome asserted her rights under the FLSA, the PPD retaliated.

72. In December 2019, in close temporal proximity to when Ms. Newsome filed an EEOC charge and a federal lawsuit, Defendant denied several requests for an extension of her restricted duty status (she was on restricted duty as a result of a head injury she had suffered on the job).

73. From approximately January 8, 2020 to January 15, 2020, Defendant sent Ms. Newsome home from work without pay.

74. Between approximately January 16, 2020 to January 27, 2020, Ms. Newsome attempted to return to work, however Defendant sent her home without pay approximately every 2 to 3 days.

75. From approximately January 27, 2020 to February 12, 2020, Defendant again sent Ms. Newsome home from work without pay.

76. In February 2020, Defendant placed Ms. Newsome on "no duty" status without pay.

77. Defendant forced Ms. Newsome to use her accrued personal time during the time periods mentioned above when Defendant forced Ms. Newsome to stay home from work without pay.

78. Defendant notified Ms. Newsome that as a result of the above, her accrued personal time is now 59 hours into the negative.

79. Moreover, after Ms. Newsome filed her lawsuit, coworkers and supervisors in the Neighborhood Services Unit ostracized, stigmatized and ignored her.

80. Ms. Newsome was labeled a "troublemaker" after she filed her lawsuit.

81. On or about February 28, 2020, Defendant placed Ms. Newsome on "no duty" status without pay. To date, Plaintiff remains out of work without pay.

82. The above are also some examples of the unlawful discrimination, harassment and retaliation that Ms. Newsome personally suffered at the hands of Defendant.

83. Defendant discriminated against Ms. Newsome in the terms and conditions of her employment because of her sex characteristics.

84. Defendant retaliated against Ms. Newsome because she reported or otherwise opposed Defendant's illegal conduct.

85. Defendant subjected Ms. Newsome to harassment and a hostile work environment based on sex and retaliation.

86. Ms. Newsome claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

87. As a result of Defendant's unlawful discrimination, harassment and retaliation, Ms. Newsome has suffered ongoing emotional distress.

88. Upon information and belief, the discrimination and retaliation will continue and Plaintiff hereby makes a claim for all continuing harassment and retaliation.

89. In 2011, Surgeon General Regina Benjamin issued a *Call to Action to Support Breastfeeding ("Call to Action")*, which identified employment as a significant barrier for women to meet their breastfeeding goals.[3]

90. Breast milk is well recognized as the optimal source of nutrition for infants and it provides numerous protections against illnesses and diseases for infants and mothers alike.

---

[3] U.S. Department of Health and Human Services. The Surgeon General's Call to Action to Support Breastfeeding. Washington, DC: U.S. Department of Health and Human Services, Office of the Surgeon General; 2011.

91. Infants who are not breastfed or who are weaned early are more likely to suffer common childhood infections such as gastrointestinal infections and acute otitis media, as well as lower respiratory infections and sudden infant death syndrome.[4]

92. Furthermore, breastfed infants are less likely to be overweight or have diabetes later in life and mothers who breastfeed are less likely to develop breast and ovarian cancer.[5]

93. Increased duration of lactation is also associated with a lower prevalence of hypertension, diabetes, and cardiovascular disease in women.[6]

94. The majority of mothers in the United States want to breastfeed and most (80%) start breastfeeding.[7]

95. Although breastfeeding initiation and duration have consistently improved, one study revealed that 60% of women do not meet their breastfeeding goals.[8]

96. Mothers face a range of potential barriers to breastfeeding, including lack of support from employers.[9]

---

[4] Ip S, Chung M, Raman G, et al. Breastfeeding and maternal and infant health outcomes in developed countries. Evid Rep Technol Assess. 2007:1–186.

[5] Victora CG, Bahl R, Barros AJ, et al. Breastfeeding in the 21st century: Epidemiology, mechanisms, and lifelong effect. Lancet (London, England) 2016;387:475–490.

[6] Schwarz EB, Ray RM, Stuebe AM, et al. Duration of lactation and risk factors for maternal cardiovascular disease. Obstet Gynecol. 2009;113:974–982.

[7] Centers for Disease Control and Prevention, U.S. Department of Health and Human Services. Nutrition, physical activity and obesity data, trends and maps web site. 2015 Available at: https://nccd.cdc.gov/NPAO_DTM. Accessed February 17, 2020.

[8] Odom EC, Li R, Scanlon KS, Perrine CG, Grummer-Strawn L. Reasons for earlier than desired cessation of breastfeeding. Pediatrics. 2013;131:e726–e732.

[9] U.S. Department of Health and Human Services. The Surgeon General's Call to Action to Support Breastfeeding. Washington, DC: U.S. Department of Health and Human Services, Office of the Surgeon General; 2011.

97. Employed mothers are less likely to initiate breastfeeding and more likely to stop breastfeeding earlier than mothers who are not employed.[10]

98. Employed mothers who are breastfeeding face a number of challenges such as inflexible work schedules and a lack of privacy to express their milk and unsupportive employers.

99. The impact of Defendant's failure to comply with the requirements of the FLSA will fall disproportionally on female police officers.

100. As a result of Defendant's violations of the law, Plaintiff and Collective Class Plaintiffs were subjected to employment inconsistent with the FLSA.

101. As a result, Plaintiff and Collective Class Plaintiffs have suffered damages and will continue to be irreparably harmed.

## COUNT I
### VIOLATIONS OF FLSA PROTECTIONS FOR NURSING MOTHERS
### 29 U.S.C. § 207(r)
### Plaintiff and Collective Class Plaintiffs v. Defendant City of Philadelphia

102. Plaintiff repeats every allegation made in the above paragraphs of this complaint.

103. Section 4207 of the Patient Protection and Affordable Care Act ("ACA"), which amended Section 7 of the FLSA, 29 U.S.C. § 207, requires employers to provide "reasonable break time for an employee to express breast milk for her nursing child for 1 year after the child's birth each time such employee has need to express the milk." 29 U.S.C. § 207(r)(1)(A).

104. The law further requires employers to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk." 29 U.S.C. § 207(r)(1)(B).

---

[10] Mirkovic KR, Perrine CG, Scanlon KS, Grummer-Strawn LM. In the United States, a mother's plans for infant feeding are associated with her plans for employment. J Hum Lact. 2014;30:292–297.

105.     The FLSA and the "Break Time for Nursing Mothers" provision cover all public agency employees of a State, a political subdivision of a State, or an interstate government agency. 29 U.S.C. § 203(s)(1)(C).

106.     The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee, including individual supervisors and management officials. 29 U.S.C. § 203(d).

107.     Defendant violated Plaintiff and Collective Class Plaintiffs' rights under the FLSA by (1) failing to provide reasonable break time for Plaintiff and Collective Class Plaintiffs to "express breast milk for her nursing child for 1 year after the child's birth each time she had a need to express the milk"; and (2) failing to provide Plaintiff and Collective Class Plaintiffs "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used to express breast milk."

108.     The foregoing actions, policies and practices of Defendant violate the FLSA.

109.     Defendant's actions were willful, in bad faith and in reckless disregard of clearly applicable FLSA provisions.

110.     The FLSA provides, "Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

111.     "Although it does not appear that the Third Circuit has addressed the issue, at least six other circuit courts of appeals have affirmed cases where, in addition to an equal

amount in liquidated damages, a plaintiff sought to recover non-economic damages, such as emotional distress damages." Green v. Ventnor Beauty Supply, Inc., 2019 WL 2099821 at n.1 (D.N.J. May 14, 2019) (citing Pineda v. JTCH Apartments, L.L.C., 843 F.3d 1062, 1065 (5th Cir. 2016) (citing the First, Sixth, Seventh, Eighth, and Ninth Circuits and noting "the uniform view of our sister circuits that damages for emotional distress are available" under the FLSA)).

112.    A plaintiff is also entitled to "a reasonable attorney's fee to be paid by the defendant, and costs of the action." Id.

113.    Defendant is liable to Plaintiff and Collective Class Plaintiffs for actual damages, liquidated damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs and expenses.

**WHEREFORE**, Plaintiff prays for the following relief on behalf of herself and Collective Class Plaintiffs:

a.   An Order from this Court permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

b.   An Order from this Court ordering Defendant to file with this Court and furnish to the undersigned counsel a list of all names and addresses of all female Police Officers who have worked for Defendant during the preceding three years, and authorizing Plaintiff's counsel to issue a notice at the earliest possible time to these individuals, informing them that this action has been filed, of the nature of the action, and of their right to opt in to this lawsuit if they worked for Defendant during the liability period, but were or continue to be denied their rights under the Break Time for Nursing Mothers provision of the FLSA;

c.   Adjudicating and declaring that Defendant's conduct as set forth herein and above is in violation of the FLSA;

d.   Adjudicating and declaring that Defendant violated the FLSA by failing to provide reasonable break time and private, sanitary lactation space for nursing mothers;

e.   Awarding Plaintiff and Collective Class Plaintiffs damages in an amount consistent with the FLSA;

f.   Awarding Plaintiff and Collective Class Plaintiffs liquidated damages in accordance with the FLSA;

g.   Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Defendant, in accordance with the FLSA;

h.   Awarding pre- and post-judgment interest and court costs as further allowed by law;

i.   Granting Plaintiff and Collective Class Plaintiffs leave to add additional plaintiffs by motion, the filing of written opt in consent forms, or any other method approved by the Court; and

j.   For all additional general and equitable relief to which Plaintiff and Collective Class Plaintiffs are entitled.

## <u>COUNT II</u>
### FLSA RETALIATION
### 29 U.S.C. § 215
### <u>Plaintiff v. Defendant City of Philadelphia</u>

112.   Plaintiff repeats every allegation made in the above paragraphs of this complaint.

113.   The FLSA prohibits retaliation by employers against employees for asserting their rights under the Act. 29 U.S.C. § 215(a)(3).

114.   Defendant violated the FLSA's anti-relation provision when it took materially adverse employment actions against Plaintiff for asserting her rights under the Break Time for Nursing Mothers law.

115.   Because Plaintiff asserted her rights under the FLSA, Defendant retaliated against her by denying her extensions of her restricted duty status, sending her home from work without pay, placing her on leave without pay, forcing her to use her accrued personal time to account for these hours when she was sent home without pay, denouncing her reputation, stigmatizing her, and placing Plaintiff on "no duty" status in late February 2020.

116.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and the City's actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendant's antagonism and change in demeanor toward Plaintiff after Defendant became aware of Plaintiff's protected activity.

117.     The FLSA provides, "Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

118.     "Although it does not appear that the Third Circuit has addressed the issue, at least six other circuit courts of appeals have affirmed cases where, in addition to an equal amount in liquidated damages, a plaintiff sought to recover non-economic damages, such as emotional distress damages." Green v. Ventnor Beauty Supply, Inc., 2019 WL 2099821 at n.1 (D.N.J. May 14, 2019) (citing Pineda v. JTCH Apartments, L.L.C., 843 F.3d 1062, 1065 (5th Cir. 2016) (citing the First, Sixth, Seventh, Eighth, and Ninth Circuits and noting "the uniform view of our sister circuits that damages for emotional distress are available" under the FLSA)).

119.     A plaintiff is also entitled to "a reasonable attorney's fee to be paid by the defendant, and costs of the action." Id.

120.     Defendant is liable to Plaintiff and Collective Class Plaintiffs for actual damages, liquidated damages and other relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs and expenses.

**WHEREFORE**, Plaintiff prays for the following relief on behalf of herself and Collective

Class Plaintiffs:

a. An Order from this Court permitting this litigation to proceed as a collective action
   pursuant to 29 U.S.C. § 216(b);

b. An Order from this Court ordering Defendant to file with this Court and furnish to the
   undersigned counsel a list of all names and addresses of all female Police Officers who
   have worked for Defendant during the preceding three years, and authorizing Plaintiff's
   counsel to issue a notice at the earliest possible time to these individuals, informing them
   that this action has been filed, of the nature of the action, and of their right to opt in to
   this lawsuit if they worked for Defendant during the liability period, but were or continue
   to be denied their rights under the Break Time for Nursing Mothers provision of the
   FLSA;

c. Adjudicating and declaring that Defendant's conduct as set forth herein and above is in
   violation of the FLSA;

d. Adjudicating and declaring that Defendant violated the FLSA by retaliating against
   employees who asserted their rights to reasonable break time and private, sanitary
   lactation space;

e. Awarding Plaintiff and Collective Class Plaintiffs damages in an amount consistent with
   the FLSA;

f. Awarding Plaintiff and Collective Class Plaintiffs liquidated damages in accordance with
   the FLSA;

g. Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by
   Defendant, in accordance with the FLSA;

h. Awarding pre- and post-judgment interest and court costs as further allowed by law;

i. Granting Plaintiff and Collective Class Plaintiffs leave to add additional plaintiffs by
   motion, the filing of written opt in consent forms, or any other method approved by the
   Court; and

j. For all additional general and equitable relief to which Plaintiff and Collective Class
   Plaintiffs are entitled.

<u>COUNT III</u>
**TITLE VII DISPARATE TREATMENT**
**42 U.S.C. § 2000e-2**
<u>**Plaintiff Janelle Newsome v. Defendant City of Philadelphia**</u>

122.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

123.     Title VII provides, in relevant part, that "it shall be an unlawful employment

practice for an employer . . . to discriminate against any individual with respect to [her]

compensation, terms, conditions, or privileges of employment, because of [her] race,

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

124.     Title VII further provides that "it shall be an unlawful employment practice for

any employer . . . controlling . . . training or retraining, including on-the-job training

programs to discriminate against any individual because of [her] race, color, religion, sex,

or national origin in admission to, or employment in, any program established to provide

. . . training." 42 U.S.C. § 2000e-2(d).

125.     In 1978, Congress enacted the Pregnancy Discrimination Act, 92 Stat. 2076,

which added new language to Title VII's definitions subsection to specify that Title VII's

"ter[m] 'because of sex' . . . include[s] . . . because of or on the basis of pregnancy,

childbirth, or related medical conditions.; and women affected by pregnancy, childbirth,

or related medical conditions shall be treated the same for all employment-related

purposes . . . as other persons not so affected but similar in their ability or inability to

work." 42 U.S.C. § 2000e(k); <u>Young v. United Parcel Serv., Inc.</u>, 135 S. Ct. 1344-45

(2015) (explaining "that the denial of an accommodation constituted disparate treatment

under the Pregnancy Discrimination Act.").

126.     Title VII further provides that "un unlawful employment practice is established

when the complaining party demonstrates that race, color, religion, sex, or national origin

27

was a motivating factor for any employment practice, even though other factors also

motivated the practice." 42 U.S.C. § 2000e-2(m).

127.     The City engaged in unlawful employment practices prohibited by Title VII by

intentionally discriminating against Plaintiff with respect to her compensation, terms,

conditions, training and privileges of employment because of her sex and pregnancy.

128.     The City subjected Plaintiff to adverse tangible employment actions—defined as

significant changes in Plaintiff's employment status, discipline, denial of training, failure

to promote, reassignment with significantly different job responsibilities, and decisions

causing changes in significant changes in her employment benefits.

129.     Plaintiff's protected characteristics (sex and pregnancy) played a determinative

factor in the City's decisions.

130.     The City cannot show any legitimate nondiscriminatory reasons for its

employment practices and any reasons proffered by the City for its actions against

Plaintiff are pretextual and can readily be disbelieved.

131.     Alternatively, Plaintiff's protected status played a motivating part in the City's

decisions even if other factors may also have motivated its actions against Plaintiff.

132.     The City acted with the intent to discriminate.

133.     The City acted upon a continuing course of conduct.

134.     As a result of the City's violations of Title VII, Plaintiff has suffered damages,

including, but not limited to: past and future lost wages, pain and suffering,

inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible

and intangible.

**WHEREFORE**, Plaintiff Janelle Newsome demands judgment against Defendant City of Philadelphia and prays for the following relief: (1) an award of compensatory damages in an amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that the City's conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

<u>COUNT IV</u>
**TITLE VII RETALIATION**
**42 U.S.C. § 2000e-3**
<u>**Plaintiff Janelle Newsome v. Defendant City of Philadelphia**</u>

135.     Plaintiff repeats every allegation made in the above paragraphs of this complaint.

136.     Title VII protects employees from retaliation for attempting to exercise their rights under the Act:

> 42 U.S.C. § 2000e-3. Other unlawful employment practices
>
> (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

137.     The Supreme Court in <u>Burlington v. N. & S.F. Ry. V. White</u>, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

138.     Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). <u>Moore v. City of Philadelphia</u>, 461 F.3d

331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

139.     Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62 (rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

140.     "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[she] was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995); see also Moore, 461 F.3d at 341 (finding that a transfer of a police officer from a district could constitute actionable retaliation because it "is the kind of action that might dissuade a police officer from making or supporting a charge of unlawful discrimination within his squad.").

141.     Here, the City discriminated against Plaintiff because Plaintiff asserted her rights to a discrimination-free workplace under Title VII.

142.     Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination on the basis of sex was violated.

143.     Because Plaintiff asserted her rights under the Title VII, Defendant retaliated against her by denying her extensions of her restricted duty status, sending her home

from work without pay, placing her on leave without pay, forcing her to use her accrued personal time to account for these hours when she was sent home without pay, denouncing her reputation, stigmatizing her, and placing Plaintiff on "no duty" status in late February 2020.

144.     The City also discriminated against Plaintiff by taking materially adverse actions against third parties who engaged in protected activity on Plaintiff's behalf.

145.     In determining whether a plaintiff has produced evidence of causation, courts in the Third Circuit focus on two indicia: timing and evidence of ongoing antagonism. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and the City's actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendant's antagonism and change in demeanor toward Plaintiff after Defendant became aware of Plaintiff's protected activity.

146.     The City's actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

147.     The City acted upon a continuing course of conduct.

148.     As a result of the City's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**WHEREFORE**, Plaintiff Janelle Newsome demands judgment against Defendant City of Philadelphia and prays for the following relief: (1) an award of compensatory damages in an

amount consistent with Title VII; (2) an award of reasonable attorneys' fees and costs of this action in accordance with Title VII; (3) an award of pre- and post-judgment interest and court costs as further allowed by law; (4) an adjudication and declaration that Defendant's conduct as set forth herein is in violation of Title VII; and (5) all additional general and equitable relief to which Plaintiff is entitled.

**COUNT V**
**PHRA DISCRIMINATION**
**43 P.S. §§ 951-963**
**Plaintiff Janelle Newsome v. Defendant City of Philadelphia**

149.     Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

150.     The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

151.     Defendant engaged in unlawful employment practices in violation of the PHRA by discriminating against Plaintiff because of her sex.

152.     Defendant acted with intent to discriminate.

32

153.     Defendant cannot show any legitimate nondiscriminatory reason for its actions

against Plaintiff and any reasons proffered by Defendant are pretextual and can be readily

disbelieved.

154.     As a result, Plaintiff has suffered damages.

155.     Plaintiff hereby makes a claim against Defendant under all of the applicable

paragraphs of the PHRA § 955.

**WHEREFORE**, Plaintiff demands judgment against Defendant and prays for the following

relief: (1) actual damages; (2) compensatory damages in an amount consistent with the PHRA;

(3) reasonable attorneys' fees in accordance with the PHRA; (4) litigation costs in accordance

with the PHRA; (5) pre- and post-judgment interest as further allowed by law; (6) an

adjudication and declaration that Defendant's conduct as set forth herein is in violation of the

PHRA; (7) punitive damages in accordance with the PHRA; (8) front pay in accordance with the

PHRA; and (9) all additional general and equitable relief to which Plaintiff is entitled.

**COUNT VI**
**PHRA RETALIATION**
**43 P.S. §§ 951-963**
**Plaintiff Janelle Newsome v. Defendant City of Philadelphia**

156.     Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

157.     PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For

any person, employer, employment agency or labor organization to discriminate in any

manner against any individual because such individual has opposed any practice

forbidden by this act, or because such individual has made a charge, testified or assisted,

in any manner, in any investigation, proceeding or hearing under this act."

158.     Defendant engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of their employer.

159.     The City discriminated against Plaintiff because Plaintiff asserted her rights to a discrimination-free workplace under the PHRA.

160.     Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination on the basis of sex was violated.

161.     Because Plaintiff asserted her rights under the PHRA, Defendant retaliated against her by denying her extensions of her restricted duty status, sending her home from work without pay, placing her on leave without pay, forcing her to use her accrued personal time to account for these hours when she was sent home without pay, denouncing her reputation, stigmatizing her, and placing Plaintiff on "no duty" status in late February 2020.

162.     The City also discriminated against Plaintiff by taking materially adverse actions against third parties who engaged in protected activity on Plaintiff's behalf.

163.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and the City's actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendant's antagonism and change in demeanor toward Plaintiff after Defendant became aware of Plaintiff's protected activity.

164.     As a result, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant and prays for the following relief: (1) actual damages; (2) compensatory damages in an amount consistent with the PHRA;

(3) reasonable attorneys' fees in accordance with the PHRA; (4) litigation costs in accordance

with the PHRA; (5) pre- and post-judgment interest as further allowed by law; (6) an

adjudication and declaration that Defendant's conduct as set forth herein is in violation of the

PHRA; (7) punitive damages in accordance with the PHRA; (8) front pay in accordance with the

PHRA; and (9) all additional general and equitable relief to which Plaintiff is entitled.

**COUNT VII**
**PHRA AIDING AND ABETTING**
**43 P.S. §§ 951-963**
**Plaintiff Janelle Newsome v. Defendant City of Philadelphia**

165.     Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

166.     PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "for

any person, employer, employment agency, labor organization or employee, to aid, abet,

incite, compel or coerce the doing of any act declared by this section to be an unlawful

discriminatory practice, or to obstruct or prevent any person from complying with the

provisions of this act or any order issued thereunder, or to attempt, directly or indirectly,

to commit any act declared by this section to be an unlawful discriminatory practice."

167.     Defendant engaged in an unlawful discriminatory practice in violation of PHRA

§955(e) by committing, aiding, abetting, inciting, compelling and coercing the

discriminatory conduct.

168.     As a result, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant and prays for the following

relief: (1) actual damages; (2) compensatory damages in an amount consistent with the PHRA;

(3) reasonable attorneys' fees in accordance with the PHRA; (4) litigation costs in accordance

with the PHRA; (5) pre- and post-judgment interest as further allowed by law; (6) an

35

adjudication and declaration that Defendant's conduct as set forth herein is in violation of the PHRA; (7) punitive damages in accordance with the PHRA; (8) front pay in accordance with the PHRA; and (9) all additional general and equitable relief to which Plaintiff is entitled.

## COUNT VIII
## PFPO DISCRIMINATION
### Philadelphia Code §§ 9-1101 et seq
### Plaintiff Janelle Newsome v. Defendant City of Philadelphia

169.     Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

170.     The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

171.     The City engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of Plaintiff's sex.

172.     The City acted with intent to discriminate.

173.     The City cannot show any legitimate nondiscriminatory reason for its actions

against Plaintiff and any reasons proffered by the City are pretextual and can be readily

disbelieved.

174.     As a result, Plaintiff has suffered damages.

175.     Plaintiff hereby makes a claim against the City under all of the applicable

paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

**WHEREFORE**, Plaintiff demands judgment against Defendant and prays for the following

relief: (1) actual damages; (2) compensatory damages in an amount consistent with the PFPO;

(3) reasonable attorneys' fees in accordance with the PFPO; (4) litigation costs in accordance

with the PFPO; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication

and declaration that Defendant's conduct as set forth herein is in violation of the PFPO; (7)

punitive damages in accordance with the PFPO; (8) front pay in accordance with the PFPO; and

(9) all additional general and equitable relief to which Plaintiff is entitled.

**<u>COUNT IX</u>**
**PFPO RETALIATION**
**Philadelphia Code §§ 9-1101 et seq.**
**<u>Plaintiff Janelle Newsome v. Defendant City of Philadelphia</u>**

176.     Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

177.     The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be

unlawful discriminatory practice: "For any person to harass, threaten, harm, damage, or

otherwise penalize, retaliate or discriminate in any manner against any person because he,

she or it has complied with the provisions of this Chapter, exercised his, her or its rights

under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or

assisted in any manner in any investigation, proceeding or hearing hereunder."

178.     Defendant engaged in an unlawful discriminatory practice in violation of
Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against Plaintiff
because of Plaintiff's opposition to the unlawful employment practices of their employer.

179.     The City discriminated against Plaintiff because Plaintiff asserted her rights to a
discrimination-free workplace under the PFPO.

180.     Plaintiff was acting under a reasonable, good faith belief that her right to be free
from discrimination on the basis of sex was violated.

181.     Because Plaintiff asserted her rights under the PFPO, Defendant retaliated against
her by denying her extensions of her restricted duty status, sending her home from work
without pay, placing her on leave without pay, forcing her to use her accrued personal
time to account for these hours when she was sent home without pay, denouncing her
reputation, stigmatizing her, and placing Plaintiff on "no duty" status in late February
2020.

182.     The City also discriminated against Plaintiff by taking materially adverse actions
against third parties who engaged in protected activity on Plaintiff's behalf.

183.     Plaintiff will rely on a broad array of evidence to demonstrate a causal link
between her protected activity and the City's actions taken against her, such as the
unusually suggestive proximity in time between events, as well as Defendant's
antagonism and change in demeanor toward Plaintiff after Defendant became aware of
Plaintiff's protected activity.

184.     As a result, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant and prays for the following
relief: (1) actual damages; (2) compensatory damages in an amount consistent with the PFPO;

(3) reasonable attorneys' fees in accordance with the PFPO; (4) litigation costs in accordance

with the PFPO; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication

and declaration that Defendant's conduct as set forth herein is in violation of the PFPO; (7)

punitive damages in accordance with the PFPO; (8) front pay in accordance with the PFPO; and

(9) all additional general and equitable relief to which Plaintiff is entitled.

**COUNT X**
**PFPO AIDING AND ABETTING**
**Philadelphia Code §§ 9-1101 et seq.**
**Plaintiff Janelle Newsome v. Defendant City of Philadelphia**

122.      Plaintiff incorporates by reference each and every allegation made in the above

paragraphs of this complaint.

123.      The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be

unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or

coerce the doing of any unlawful employment practice or to obstruct or prevent any

person from complying with the provisions of this Section or any order issued hereunder

or to attempt directly or indirectly to commit any act declared by this Section to be an

unlawful employment practice."

124.      Defendant engaged in an unlawful discriminatory practice in violation of

Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting,

compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

125.      As a result, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant and prays for the following

relief: (1) actual damages; (2) compensatory damages in an amount consistent with the PFPO;

(3) reasonable attorneys' fees in accordance with the PFPO; (4) litigation costs in accordance

with the PFPO; (5) pre- and post-judgment interest as further allowed by law; (6) an adjudication

39

and declaration that Defendant's conduct as set forth herein is in violation of the PFPO; (7)

punitive damages in accordance with the PFPO; (8) front pay in accordance with the PFPO; and

(9) all additional general and equitable relief to which Plaintiff is entitled.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

a trial by jury on all questions of fact raised by this complaint.

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**

*/s/ Ian M. Bryson, Esquire*
IAN M. BRYSON, ESQUIRE
1835 Market Street, Suite 2950
Philadelphia, PA 19103
215-391-4790
ian@dereksmithlaw.com

Dated: <u>December 12, 2020</u>         *Attorneys for Plaintiff and the Proposed Class*

**CONSENT TO JOIN COLLECTIVE ACTION**
**FAIR LABOR STANDARDS ACT OF 1938**
**29 U.S.C. § 216(b)**

I hereby consent to be a party plaintiff in a lawsuit under the Fair Labor Standards Act

concerning my employment with the Philadelphia Police Department to recover all available

relief under 29 U.S.C. § 216(b).

Janelle    Newsome
PRINT NAME CLEARLY

_Janelle New_
SIGNATURE

1442 ELDRIDGE ST
STREET ADDRESS

PHILA , PA    19149
CITY, STATE AND ZIP CODE

215 317 .2835
TELEPHONE NUMBER

Janellericardson@gmail.com
EMAIL ADDRESS


EXHIBIT
A